## RAILROAD RETIREMENT BOARD v. BATES.

### No. 7812.

United States Court of Appeals for the District of Columbia.

Decided Feb. 24, 1942.

Mr. Lester P. Schoene, General Counsel, Railroad Retirement Board, of Washington, D. C., for appellant.

Mr. J. M. Souby, with whom Mr. Gregory S. Prince was on the brief, both of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

VINSON, Associate Justice.

Is a person who is receiving a pension under subsection 6(a) of the Railroad Retirement Act of 1937[1] precluded by that fact alone from becoming eligible for an annuity under section 2? After the Railroad Retirement Board had decided in the affirmative, Miss Bates filed a complaint in the District Court under the authority of section 11, and prayed that the Court set aside the Board's decision on the limited point and proceed to adjudicate the other questions of her eligibility for an annuity. The Board moved to dismiss for failure to state a claim upon which relief could be granted. This motion was denied, and when the Board failed to plead further, the Court ordered that plaintiff's eligibility for an annuity be determined irrespective of the fact that she is receiving a pension, and if found eligible, grant the annuity as of August 1, 1938, in lieu of the pension. The Board appeals.

For the 26 years preceding January 1, 1934, Miss Bates was employed jointly by the Southern Pacific Company and the Union Pacific Railroad Company in an of-

[1] 50 Stat. 307 et seq., 45 U.S.C.A. § 228a et seq.

fice maintained here. On that date Southern Pacific withdrew from the arrangement, and plaintiff remained an employee of Union Pacific until it closed its office July 31, 1938.

Southern Pacific granted Miss Bates a pension of $21.59 per month effective January 1, 1934. The government assumed the pension as of July 1, 1937.

In July, 1938, Miss Bates filed an application for an annuity under section 2, stating that she was 71 years of age and intended to cease compensated service on the 31st. She computed the annuity to which she was entitled at $70.34 per month.

The present Act of 1937 was an amendment of the 1935 Act by substitution. Roughly the 1937 Act divides those receiving payments after their railroad service has ended into annuitants and pensioners. The first are those who receive retirement benefits from the permanent government plan under section 2. The second are those who received pensions from their employers which the government assumed under subsection 6(a). We are now concerned with the mutual exclusiveness of the two classifications and the more precise question, can a person change from one group to the other. For the purposes of clarity we mention a third group: those who were pensioners but were also eligible for annuities on July 1, 1937. That group receive special statutory consideration in subsection 6(a) and are made annuitants.

 Although the Board argues that the question here is whether its interpretation of the Act is plainly erroneous, the issue we shall decide, as has been stated, is whether a person otherwise eligible for an annuity under section 2 is disqualified because he receives a pension under subsection 6(a). Inasmuch as the Board is familiar with problems in its field and has had experience and understands the Act which creates it, it is proper that weight should be given to its interpretations. Nonetheless the question is a question of law, one of statutory interpretation,[2] and that is a field in which courts are regarded as having some expertness just as administrative tribunals have special knowledge of the recurring factual patterns in their several spheres of activity. This is, apparently, the first decision the Board has made on the instant problem in accordance with its interpretation of the Act, and our attention has been called to only one similar situation. There is no long administrative interpretation of the Act as a whole nor of the sections with which we shall deal in particular. There has been no congressional re-enactment after an administrative interpretation. This factual situation is one on which the Act carries no positive directive terms; it is at least an interstitial situation. Thus, while according weight to the Board's conclusion and reasoning, in view of the nature of the question and the terms of the Act, we are free to affirm the District Court, although the Board's interpretation of the Act may not be plainly erroneous.[3]

Eligibility for an annuity, which plaintiff seeks, is set out in section 2, which begins:

"The following-described individuals, if they shall have been employees on or after [August 29, 1935], shall, subject to the conditions set forth in subsections (b), (c), and (d), be eligible for annuities after they shall have ceased to render compensated service to any person * * *."

The main rules for computation are presented in section 3. For the purposes of this litigation, Miss Bates now and as of the time of this controversy, unquestionably meets the express requirements of section 2. There is nothing in any part of section 2 which says directly or indirectly that a pensioner is ineligible for its benefits.

We turn to subsection 6(a), which provides for the assumption of pensions, a new feature of the 1937 Act:

$m$ { "Beginning July 1, 1937, each individual then on the pension or gratuity roll of an employer by reason of his employment, who was on such roll on March 1, 1937, shall be paid on July 1, 1937, and on the 1st day of each calendar month thereafter

$m'$ { during his life,

a pension at the same rate as the pension or gratuity granted to him by the employer * * *."

---

[2] "An employee * * * may apply to the district court * * * to compel the Board (1) to set aside an action or decision of the Board claimed to be in violation of a legal right of the applicant or (2) to take action or to make a decision necessary for the enforcement of a legal right of the applicant." 50 Stat. 315, 45 U.S.C.A. § 228k.

[3] Rep. Atty. Gen'l Comm. on Adm. Pro. (1941) 78, 90, 91.

There is no reference directly or indirectly to the annuity section.

There was a substantial group of persons at about the time the 1937 Act was to become law whose pensions would be assumed under subsection 6(a), and who would also be eligible for annuities under section 2. And so Congress enacted subsection 6(b).

n {
"No individual covered by this section [6(a) ] who was on

n' { July 1, 1937, eligible for an annuity under this Act [sections 228a–228r] or the Railroad Retirement Act of 1935 [former sections 215–228 of this title],

based in whole or in part on service rendered prior to January 1, 1937, shall receive a pension payment under this section subsequent to the payment due on October 1, 1937 * * *.

o { The annuity claims of such individuals who receive pension payments under this section shall be adjudicated in the same manner and with the same effect as if no pension payments had been made:

p { *Provided, however,* That no such individual shall be entitled to receive both a pension under this section and an annuity under this Act [sections 228a–228r] or the Railroad Retirement Act of 1935 [former sections 215–228 of this title]

q { and in the event pension payments have been made to any such individual in any month in which such individual is entitled to an annuity under this Act [sections 228a–228r] or the Railroad Retirement Act of 1935 [former sections 215–228 of this title], the difference between the amounts paid as pensions and the amounts due as annuities shall be adjusted in accordance with such rules and regulations as the Board may deem just and reasonable."

The Board makes, we believe, six main arguments in support of its construction that plaintiff's eligibility under section 2 cannot be considered inasmuch as she is receiving a pension under subsection 6(a): (1) Section 6, by its basic plan, divides those receiving retirement benefits as of July 1, 1937, into two mutually exclusive permanent groups—annuitants and pensioners. In this connection, the provision of subsection 6(a) that the pensions shall be paid for life (m') is stressed. (2) This mutually exclusive permanent interpretation explains, and no other would, the provision in subsection 6(b) that pension payments are to cease by October 1, 1937 (n), for those eligible on July 1st of that year (n'). (3) The provision in subsection 6(b) that the annuities of those eligible on July 1, 1937, shall be determined as though no pension payments had been made (o) also supports the mutually exclusive permanent interpretation. (4) Likewise, the provision in subsection 6(b) for adjustment in respect of this July 1st group to prevent duplication of payments (q) evinces the mutually exclusive permanent interpretation. (5) Congress has given no direction for changing from one group to another, except in subsection 6(b), which is inapplicable here; there is not even a statutory statement of whether the change would be optional. (6) If the mutually exclusive permanent interpretation is not followed, there is a likelihood that a person will receive both a pension and an annuity.

Miss Bates countered with three main arguments: (1) To determine whether one is eligible for an annuity you should look only to the annuity section. (2) Subsection 6(a) sets up the pension plan and makes no reference to section 2, let alone prohibiting the granting of an annuity to one holding a pension. (3) Subsection 6(b) is written for a special group which does not include her; no inferences should be drawn from it to prevent her receiving an annuity. Miss Bates concludes that she is entitled to an annuity in lieu of her pension, and suggests that maybe she should receive both.

No construction of the Act for application to this case is free from obstacles. As the Board has shown it is difficult to construe the Act so as to permit a transfer from pensions to annuities. Likewise, it is difficult to believe that the proper construction of the Act is to allow both a pension and an annuity. As Miss Bates has argued, it is difficult to interpret the Act so that it allows only a pension for one situated as she is. Likewise, it is difficult to construe the Act so that Miss Bates fits into subsection 6(b), which if done would overcome most of the other obstacles.

■ Plaintiff's case, apparently, never occurred to Congress. A literal reading of section 2 and of subsection 6(a) would

permit plaintiff to receive both annuity and pension as easily as a literal reading of subsection 6(a) results in a pension alone. Neither of these results is desirable nor fits in with what is provided for in other situations. Those who came under both pensions and annuities on July 1, 1937, receive annuities. That group cannot receive both types of payments. The original section 6 was not divided into subsections. At the end of that undivided section was the provision now found in subsection 6(b) that no individual can receive both an annuity and a pension (p).[4] The parties here agree that this provision as now written with its words "such individual" can refer only to those within subsection 6(b). Yet it is clear that the spirit of the Act is that no person should receive two types of payments. On the other hand it is clearly unjust for Miss Bates to receive only the meagre pension. Those in the class nearest her, the 6(b)-ers receive annuities. Hence, we must gather the congressional "intent" from the history, the outline, and the purpose of the Act, as well as from the specific language.

The Retirement Act of 1935 had an annuity system, but it had no pension provision. The 1937 Act continues the annuity system in what is considered to be an improved form. The assumption of the private employers' pension payments as of certain dates in 1937 shows no de-emphasis on the annuity system. It is rather an additional, secondary act on the part of the government. The government took over already existing pension rolls and assured the pensioners thereon that they would be paid the rest of their lives. Meanwhile no new people will receive pension money from the government; the pension group will grow smaller and smaller. All new individuals who receive retirement benefits will receive them under the annuity system. Annuities, then, are the system of retirement benefits. The suggestion that any wording of the pension subsection, such as "during his life" (m'), prevents one from receiving benefits under the primary system of the Act, must be scrutinized with doubt.

The argument that the plan of the Act makes pensions decrease, while annuities increase, in importance, is further enhanced by the substitution system of subsection 6(b).[5] Congress by this subsection directed that those receiving pensions, but in addition eligible for annuities on July 1st, one week after the Act became effective, were to transfer from pensions to annuities. Thus this group eligible for both is directed into the annuity system.

Miss Bates would be one of this 6(b) group except for the fact that she was working on July 1, 1937. Both parties here adopt the argument that the cessation of compensated service is a vital element of eligibility for an annuity. An argument can and has been made, however, that the cessation of compensated service is a condition for the payment of an annuity rather than a necessary factor of eligibility. The position of the present parties seems to be the better interpretation of section 2. It remains true nonetheless that Miss Bates is practically a 6(b)-er. She is much closer to those in the 6(b) group than the usual person who comes under 6(a) or 2. Miss Bates falls under both 6(a) and 2 by their own respective requirements and 6(b) is the only part of the Act which deals with persons coming under both pensions and annuity provisions. We feel, then, that inferences should not be raised from the details of subsection 6(b) leading to the conclusion that no one outside of its exact confines can or must transfer from pensions to annuities, but rather that subsection 6(b) reveals the theme of Congress

[4] Hearing before the Committee on Interstate and Foreign Commerce on H.R. 6956, 75th Cong., 1st Sess. (1937) 5, and Hearings before the Committee on Interstate Commerce on S. 2395, 75th Cong., 1st Sess. (1937) 5.

[5] A forerunner is found in the 1935 Act. "The Board shall in a like special report to be made at the earliest practicable time, make specific recommendations with regard to the desirability and practicability of substituting the provisions for annuities and other benefits to employees under this Act for any obligation for prior service or for any existing provisions for the voluntary payment of pensions to employees subject to this Act by a carrier or any employees subject to this Act, so as to relieve such carrier from its obligations for age retirement benefits under its existing pension systems and transfer such obligations to the retirement system herein established." 49 Stat. 971, § 7. See H. R. Rep. No. 1069, 75th Cong., 1st Sess. (1937) 6, 7, and Hearings before the Committee on Interstate Commerce on S. 2395, 75th Cong., 1st Sess. (1937) 76.

in setting up an annuity system with a temporary pension alleviative, and that where one comes under both the temporary and permanent plans he should be placed in the latter.

The group that are pensioners and have or will become eligible for annuities after July 1, 1937, must be small. There is no reason to believe that Congress intended that they should be treated in a manner entirely different from all others subject to the Act. It is reasonable to believe that Congress did not intend that a person should receive both an annuity and a pension or that a person should remain a pensioner, under the secondary stop-gap plan, when eligible for an annuity, under the retirement system of the Act. Thus from the history, the general plan and purpose of the Act, and a reading of section 2, subsections 6(a) and 6(b) in these lights, we conclude that the judgment of the District Court is proper.

Affirmed.