**Anunziata SANTUELLI, Plaintiff,**

v.

**Marion B. FOLSOM, Secretary of Health, Education and Welfare, Defendant.**

**No. 37019.**

United States District Court
N. D. California, S. D.

Sept. 15, 1958.

Louis F. DiResta, San Francisco, Cal., for plaintiff.

Lloyd H. Burke, U. S. Atty., by William B. Spohn, Asst. U. S. Atty., San Francisco, Cal., for defendant.

HARRIS, District Judge.

Plaintiff and defendant have filed counter-motions for summary judgment upon undisputed facts submitted by the Secretary of Health, Education and Welfare.

In 1908 plaintiff married Enrico Santuelli and lived with him as his wife for thirty-seven years until his death in 1945. Upon attaining retirement age, plaintiff applied for and received widow's insurance benefits. These continued until October of 1955 when plaintiff notified the Social Security Administration that she had remarried in Nevada that month. This remarriage terminated in an annulment some eleven months later in San Francisco. Promptly thereafter plaintiff filed her claim for reinstatement of her widow's benefits.

When the claim was disallowed, she exhausted her administrative remedies and then commenced the instant action for review on the adverse ruling of the Secretary of the Department of Health, Education and Welfare.

The legal question presented to the Court is as follows: When widow's social security insurance benefits are awarded to a claimant as the widow of a wage earner, and such benefits are terminated by reason of her remarriage, is her right to benefits revived upon her procurement of an annulment of the remarriage, even though the remarriage was not void but was voidable? Defendant construes the question as one which is limited to the issue of the effective date of the annulment: Did the Court's decree make the marriage void *ab initio*?

Under the Social Security Act (42 U.S.C.A. § 402(e), the widow is entitled to insurance benefits. A voidable remarriage which is annulled is no marriage within the meaning of the Social Security Act provisions. Thus such a remarriage is no bar to the enjoyment of insurance once the widow is restored to her status as a single person. Pearsall v. Folsom, D.C., 138 F.Supp. 939, affirmed 9 Cir., 245 F.2d 562; Mays v. Folsom, D.C., 143 F.Supp. 784; Sparks v. United States, D.C., 153 F.Supp. 909.

Pearsall v. Folsom, supra, is dispositive of all issues involved with the possible exception of the application of the law of Nevada to the status of plaintiff under the annulment obtained by her in San Francisco.

Unless the law of Nevada requires a different interpretation from that applied by this Court in the Pearsall case, plaintiff is entitled to summary judgment.

Title 11 Nev.Rev.Stat. 125.340, which covers voidable marriages which may be annulled reads that "The marriage shall be *void* from the time its nullity shall be declared by a court of competent authority." Since a void marriage is a nullity under Nevada law (Title 11 Nev.Rev. Stat. 125.290), from its inception, a voidable marriage becomes void *ab initio* when "a court of competent authority" enters its decree of annulment.

Nevada courts have not construed this statute. But similar legislation has been interpreted in McDonald v. McDonald, 6 Cal.2d 457, 460, 58 P.2d 163, 104 A.L.R. 1290, in a manner which supports plaintiff. Cf. In re Moncrief's Will, 235 N.Y. 390, 139 N.E. 550, 27 A.L.R. 1117; Saunders v. Saunders, Sup., 63 N.Y.S.2d 880.

Defendant relies upon In re Gosnell's Estate, 63 Cal.App.2d 38, 146 P.2d 42, in arguing that the annulment does not relate back to the date of the marriage. The Gosnell case, like Sefton v. Sefton, 45 Cal.2d 872, 291 P.2d 439, created an exception to the relation-back doctrine in order to achieve an equitable result. Decedent's children were protected against the claim of the alleged widow. No such consideration arises in the instant litigation. The Pearsall case considered and rejected this view espoused by defendant.

Likewise, Nott v. Folsom, D.C., 161 F.Supp. 905, 909, cited by defendant, is not controlling. A New York statute, Civil Practice Act, § 1140–a, protecting a spouse financially following annulment and providing means for compelling support, called for a different construction. This is made clear from the language in the Nott case, which recognized the distinction between the problem it was passing upon and the factual situation confronting the court in Pearsall v. Folsom, and similar cases:

"The Social Security Act was intended to give some economic support to a widow who has been deprived of it by reason of her husband's death. Remarriage, of course, meant at least theoretically that such economic assistance was no longer required. Under New York law, unlike the laws of most other states, there is now available to a wife who is a party to an annulled marriage the means of compelling support. The circumstance

that the plaintiff in the instant case did not apply for such relief does not detract from the existence of the power of the courts to make appropriate directions for her maintenance. Indeed, the statute even though no provision was made in the judgment for the support of the wife, does not preclude the Court from amending the judgment to contain a direction to the husband to make support payments.

" * * * The Court has carefully considered the various cases fervently pressed by the plaintiff in support of her position, such as Sparks v. United States, D.C.D.Vt., 153 F.Supp. 909; Pearsall v. Folsom, D.C.N.D.Cal., 138 F.Supp. 939, affirmed, 9 Cir., 245 F.2d 562; Mays v. Folsom, D.C.D.Idaho, 143 F.Supp. 784. In each the determination of status was predicated upon state law or the lack of power under state law to compel support from the husband under the annulled marriage. And this is also true of Sparks v. United States where my learned colleague Judge Gibson held that federal law controlled. Yet, it is significant that in holding the wife was not remarried within the meaning of Section 202(e)(1) upon the annulment of her second marriage he stated: '(The marriage) being annulled, under Common Law she could secure no support * * * since (her husband) had no legal duty cast upon him * * *.' * * * It is clear that the rationale in all the cases was the lack of availability of economic support for the wife from the husband who had been a party to the annulled marriage."

■ In the case at bar plaintiff is not accorded support, nor the ability to obtain the same, from the spouse of her annulled marriage which became void when plaintiff obtained her decree of annulment in September 1956. Thus the effect of the decree of annulment is to make the marriage void *ab initio* and the

widow's benefits may be restored upon the procurement of the decree. Plaintiff, under the Social Security Act, 42 U.S. C.A. § 402(e) is a widow and is entitled to insurance benefits under the Act.

Plaintiff is entitled to summary judgment, reversing the decision of the Secretary and ordering the reinstatement of plaintiff's widow's insurance benefits.