Lillian R. YEAGER, Plaintiff,

v.

Arthur S. FLEMING, Secretary of
Health, Education and Welfare,
Defendant.

Civ. No. 7270–M.

United States District Court
S. D. Florida,
Miami Division.

May 12, 1959.

Cunningham & Weinstein, Miami, Fla.,
for plaintiff.

James L. Guilmartin, U. S. Atty., Miami, Fla., for defendant.

LIEB, District Judge.

This action is brought under § 205(g) of the Social Security Act, as amended (hereinafter referred to as the Act), 42 U.S.C.A. § 405(g), which provides for judicial review of any final decision of the Secretary of Health, Education and Welfare.

Both the plaintiff and the defendant filed motions for summary judgment, upon undisputed facts submitted by the Secretary of Health, Education and Welfare.

The plaintiff, Lillian R. Yeager, is the widow of one Charles F. Yeager, a wage earner within the meaning of the Act, who died on February 10, 1951. Based upon Mr. Yeager's wage record and the fact that he left surviving a widow and a minor child the plaintiff became entitled to "mother's insurance benefits" pursuant to § 202(g) of the Act, 42 U.S.C.A. § 402(g), and for some time received payments under it.

On April 8, 1954, the plaintiff went through what purported to be a marriage ceremony with one Harry E. Blodgett. On December 10, 1954, the Superior Court in and for the County of Hartford, State of Connecticut, in cause No. 100997 entered its decree annulling the said marriage, declaring it null and void. The de-

cree, which was on a printed form generally used for divorce decrees, contained a printed recital as a purported finding of the Court that the parties were lawfully married. A further provision of the same decree approved a $3,000 property settlement between the parties, in lieu of all claims of the purported wife.

This final decree was corrected by a "Nunc Pro Tunc" order of that Court entered on July 11, 1957, deleting from the final decree the finding that the parties were lawfully married, and substituting a finding "That the plaintiff whose maiden name was Lillian Roseen Yeager entered into a marriage ceremony with the defendant on the 8th day of April 1954," and "That said purported marriage be and it hereby is declared to be null and void ab initio and that said Lillian Roseen Yeager Blodgett is hereby declared to be single and unmarried; and the name of the plaintiff is hereby declared to be Lillian Roseen Yeager, by which name she shall hereafter be known and called."

On June 18, 1954, the defendant made an administrative determination that the plaintiff's "mother's insurance benefits" should be stopped—by virtue of her remarriage, in accordance with 42 U.S.C.A. § 402(g) (1) (F). After the first annulment order, the plaintiff made an application for the restoration of these benefits. Plaintiff's said application was taken under advisement by the Referee appointed under the Act and was denied on April 30, 1956. That decision was later affirmed by the Appeals Council of the defendant on July 16, 1956. Plaintiff then instituted these proceedings.

On October 23, 1957, this Court entered an order remanding this cause to the defendant for the purpose of making additional or amended findings of fact or decision in light of the "Nunc Pro Tunc" order entered by the Superior Court of Hartford, Connecticut.

After considering this additional evidence the Secretary issued a supplemental decision dated June 30, 1958, again denying the reinstatement of the mother's insurance benefits and adhering to the original decision. A motion for summary judgment upon the record submitted was filed in this Court by each party.

The legal question involved in this dispute is whether the claimant's rights to mother's social security insurance benefits, which were awarded to her as the widow of a wage earner and which were terminated by reason of her remarriage, are revived upon an annulment of the remarriage, even though the remarriage was not void, but voidable.

The section of the Act[1] providing for mother's insurance benefits reads in pertinent parts as follows:

"(g) (1) The widow * * * of an individual who died a fully or currently insured individual after 1939, if such widow * * *

"(A) has not remarried * * *

"(F) * * * shall be entitled to mother's insurance benefits for each month, beginning with the first month after August 1950 in which she becomes so entitled to such insurance benefits and ending with the month preceding the first month in which any of the following ocurs [sic]: * * *, she remarries, * * *"

The cases dealing with the identical problem uniformly held that since the Act fails to define the term "remarriage" its meaning must be determined by the applicable state law.[2] The decision of the Referee which was adopted and adhered to by the Appeals Council was based upon the finding that under Connecticut law the marriage ceremony between the plaintiff and Blodgett had created a voidable rather than a void mar-

---

1. 42 U.S.C.A. § 402(g).

2. Santuelli v. Folsom, D.C.N.D.Cal.1958, 165 F.Supp. 224; Sparks v. United States, D.C.Vt.1957, 153 F.Supp. 909;

Pearsall v. Folsom, D.C.N.D.Cal.1956, 138 F.Supp. 939, affirmed 9 Cir., 1957, 245 F.2d 562; Mays v. Folsom, D.C.S.D. Idaho 1956, 143 F.Supp. 784.

riage, and consequently the marriage of the plaintiff to Blodgett was valid until it was declared by the Court to be null and void and the plaintiff had remarried within the meaning of the Act.

By applying the state law, courts of other jurisdictions came to the conclusions that a voidable remarriage which is annulled is no marriage within the meaning of the Act. Thus such marriage is no bar to the enjoyment of the insurance benefits once the widow is restored to her status as a single person.[3]

Unless the law of Connecticut requires a different interpretation from that followed in the above cases, the plaintiff is entitled to a summary judgment.

Connecticut General Statutes (Rev. 1949) § 7341 reads as follows:

"Void marriages; annulment. Orders relative to children and alimony. Whenever from any cause any marriage shall be void or voidable under the laws of this state or of the state in which such marriage was performed, the superior court may, upon complaint, pass a decree declaring such marriage void, and *may thereupon make such order in relation to any child of such marriage and concerning alimony as it might make in a proceeding for a divorce between such parties if married.*" (Italics supplied.)

An analysis of the Connecticut decisions construing the annulment statute indicates that a decree of nullity of a void marriage is not the same as a decree annulling a voidable marriage. The parties to a void marriage can repudiate it without court decree; however, a declaration of invalidity should be sought thereby eliminating confusion as to title to property and the status of the parties.

The parties to a voidable marriage, on the other hand can not abandon their marriage without a court decree. They must seek annulment. Until the decree of annulment, the marriage has all the attributes and incidents of a valid marriage.

Since the annulment statute expressly authorizes the courts to provide support from the husband of an annulled marriage, a voidable marriage in Connecticut is binding and effective not only until it is annulled, but it continues to have sufficient validity on which a support decree can be based.

This Court has considered the various cases advanced by the plaintiff in support of her position. She relied principally upon the California case of Pearsall v. Folsom,[4] which held that an annulled remarriage is no bar to the enjoyment of social security insurance benefits because an annulment in California renders the marriage void ab initio. In the Pearsall case the District Court entered a supplemental opinion after the Supreme Court of California in the case of Sefton v. Sefton[5] decreed that a wife's right to alimony is not restored upon the annulment of her remarriage, indicating that the "relation back" doctrine is not mandatory in California. The District Court in its supplemental opinion, after carefully considering the import of the Sefton case, adhered to its views expressed in its original memorandum opinion. The decision of the District Court was later affirmed on appeal and followed by other Federal Courts.

In each of those cases the determination of the status of the wife was predicated upon the state law which did not provide a means to compel support from the husband under an annulled marriage. The importance of this distinction is clearly evident in the decision of the District Court of the Southern District of New York in the case of Nott v. Folsom[6] commenting on the New York Statute[7] which authorizes the courts of the state to grant support to the wife

---

3. Santuelli v. Folsom, supra; Sparks v. United States, supra; Pearsall v. Folsom, supra; Mays v. Folsom, supra.

4. Pearsall v. Folsom, supra.

5. Sefton v. Sefton, 1955, 45 Cal.2d 872, 291 P.2d 439.

6. Nott v. Folsom, D.C.S.D.N.Y.1958, 161 F.Supp. 905, 909.

7. N.Y.Civil Practice Act, § 1140–a.

from the husband of an annulled marriage. Judge Weinfeld in that case refused to reinstate the plaintiff's social security insurance benefits stating:

> "The Social Security Act was intended to give some economic support to a widow who has been deprived of it by reason of her husband's death. Remarriage, of course, meant, at least theoretically that such economic assistance was no longer required. Under New York law, unlike the laws of most other states, there is now available to a wife who is a party to an annulled marriage the means of compelling support. The circumstance that the plaintiff in the instant case did not apply for such relief does not detract from the existence of the power of the courts to make appropriate directions for her maintenance. Indeed, the statute even though no provision was made in the judgment for the support of the wife, does not preclude the Court from amending the judgment to contain a direction to the husband to make support payments."

In the instant case the Connecticut statute under consideration, like the New York statute, expressly authorizes the courts to compel support from the husband of an annulled marriage. If the mere possibility or availability of support did preclude the plaintiff in the Nott case to prevail, an actual receipt of support or a property settlement in lieu of such support does unquestionably compel one to reach the same result.

In the case at bar the order of annulment of the Connecticut court granted to plaintiff the sum of $3,000 as a property settlement from Mr. Blodgett. The plaintiff contends that the amount received was in fact a return of her own property. This contention is flatly contradicted by her own testimony stating that the sum received in the property settlement represented monies she expended for her own support during the annulled marriage, since Mr. Blodgett failed to provide her with support.

The plaintiff further contends that the "Nunc Pro Tunc" order declared her marriage void "ab initio" and, therefore, she has not remarried within the meaning of the Act. Since a nunc pro tunc order can not and did not create any new or additional rights or change the legal effect of the original decree, if she could not prevail under the original decree for reasons stated, she can not prevail by virtue of the language of the "Nunc Pro Tunc" order.

In view of the foregoing the Court is constrained to hold that the plain intent of the Act [as expressed by Judge Weinfeld in the Nott case] does not permit the plaintiff to prevail in the case at bar, even when the plaintiff's case is viewed in the light of the liberal construction customarily accorded to the Act. Therefore, the plaintiff's Motion for Summary Judgment shall be denied and the defendant's Motion for Summary Judgment shall be granted.

An appropriate order will be entered herein in conformity with this Memorandum Opinion.