Helen I. GLOSS, Petitioner,
v.
RAILROAD RETIREMENT BOARD,
Respondent.

No. 16906.

United States Court of Appeals
District of Columbia Circuit.

Submitted Nov. 19, 1962.

Decided Dec. 27, 1962.

Mr. Constantine Stathacos, Buffalo, N. Y., filed a brief on behalf of petitioner and the case was treated as submitted on the brief.

Mr. Myles F. Gibbons, Gen. Counsel, Railroad Retirement Board, with whom Mr. David B. Schreiber, Associate Gen. Counsel, Railroad Retirement Board, was on the brief, submitted on the brief for respondent.

Before WASHINGTON, BASTIAN and WRIGHT, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge.

The issue presented on this appeal is one of first impression: Does annulment of a widow's second marriage revive her right to an annuity under Section 5(b) [1] of the Railroad Retirement Act? The

1. 60 Stat. 729, 45 U.S.C. § 228e(b). Section 5(b) in pertinent part reads:
"A widow of a completely or partially insured employee, * * * who at the time of filing an application for an annuity under this subsection will have in her care a child of such employee entitled to receive an annuity under subsection (c) of this section shall be entitled to an annuity for each month * * *. *Such annuity shall cease* * * * *upon her remarriage,* * * * *.*" (Emphasis supplied.)

cases [2] are divided in answering the question under a similar provision [3] of the Social Security Act, but no court has been confronted with the question under the Railroad Retirement Act. The answer turns on the interpretation of the statutory term "remarriage."

On April 24, 1959, appellant, a widow receiving a pension under Section 5(b) of the Act, married one Stephen Skowronski in New York, and her pension was terminated in accordance with the statute. Within a short time appellant filed an action in New York for annulment on the ground of fraud. In particular, appellant alleged that Skowronski had represented that he was regularly employed and that he would provide for appellant and her child, whereas in fact he was not steadily employed and did not support either appellant or her child. The Supreme Court of Erie County, New York, on January 4, 1960, entered an interlocutory decree which:

> "ORDERED, ADJUDGED AND DECREED, that the plaintiff is entitled to a Judgment annuling [sic] the marriage heretofore existing between plaintiff and defendant, and adjudging and declaring the same null and void from its inception, on the ground of the fraud of the defendant, * * *."

This interlocutory order became final April 4, 1960.

Though permitted under New York law,[4] appellant did not attempt to obtain a support decree against Skowronski after the annulment of their marriage. Rather, for obvious reasons, appellant promptly applied for reinstatement of her benefits under the Railroad Retirement Act. The Board held on the above facts that appellant had "remarried" within the intendment of the statute, and that the subsequent annulment did not change her status under the Act. She now seeks review of the Board's action in this court.[5]

To sustain the Board's application of the statutory term "remarriage," we need not find "that its construction is the only reasonable one, or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings." Unemployment Compensation Comm. of Territory of Alaska v. Aragon, 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed. 136 (1946). If the Board's interpretation has "warrant in the record" and a "reasonable basis in law," it must be affirmed. National Labor Relations Board v. Hearst Publications, 322 U.S. 111, 131, 64 S.Ct. 851, 88 L.Ed. 1170 (1944).

The statutory term here relates to family law, and ordinarily federal courts look, as the Board did here, to the law of the state for guidance in this area.[6] But state law may not control the Board in its effort to implement the statutory purpose. This is particularly true, not only where the pertinent state law is ill-defined, but where there exists as well over-all disharmony in the law of the several states.[7] Moreover, no state

---

2. Yeager v. Flemming, 5 Cir., 282 F.2d 779 (1960); Nott v. Flemming, 2 Cir., 272 F.2d 380 (1959); Folsom v. Pearsall, 9 Cir., 245 F.2d 562 (1957), noted, 36 N.C. L.Rev. 341 (1958). Like the instant case, the marriage and annulment in Nott v. Flemming were under New York law. The result reached here accords with the decision in that case.

3. 53 Stat. 1365 as amended, 42 U.S.C. § 402(e) (1), which, in pertinent part, reads:

   "The widow * * * of an individual who died a fully insured individual after 1939, if such widow—

   "(A) has not remarried,

   * * * * *

   "shall be entitled to a widow's insurance benefit * * *."

4. New York Civil Practice Act, § 1140–a. See Note, Annulments for Fraud—New York's Answer to Reno?, 48 Col.L.Rev. 900 (1948); Annotation, 54 A.L.R.2d 1410.

5. 60 Stat. 735, 45 U.S.C. § 228k; 60 Stat. 738, 45 U.S.C. § 355(f).

6. See DeSylva v. Ballentine, 351 U.S. 570, 580, 76 S.Ct. 974, 100 L.Ed. 1415 (1956).

7. See Note 2.

court will ever be called upon to determine whether, under this Act, annulment of a remarriage revives a widow's rights.[8] This responsibility is with the Board and, in interpreting the Act on a national basis, it should not be required to divine the nuances of the family law of the fifty states. We must, therefore, look to the action of the Board itself to determine whether, in carrying out the Congressional command, its construction of the Act "was irrational or without support in the record." Unemployment Comm'n v. Aragon, supra, 329 U.S. 154, 67 S.Ct. 250.

Initially, it must be remembered that Congress, when it legislates in the area of social need, acts on presumptions, not particular cases.[9] For example, in connection with the section of the Act here in suit, Congress presumed that when a widow remarried, her second husband would support her and, consequently, the fund created by the Act would be relieved of her dependence. It is a truism that not all men support their wives. But in drafting this legislation, Congress made no provision for this contingency. Acting on the presumption that most men do, it simply provided that when a widow remarried, her annuity stopped.

Perhaps Congress, after sufficient annuitant widows are remarried to feckless men, will make some provision for their care. Until now, the urgency for such legislation has not been demonstrated and it has not been enacted. Congress has provided, however, by amendment[10] to the Social Security Act, that where a protected widow's second husband dies within a year of the marriage, the widow's Social Security rights revive, thus demonstrating that Congress is alert to the social problems which continue to arise in the administration of this type of legislation and can deal with them when sufficiently motivated.

Here the second marriage of the widow and the annulment were under the laws of the state of New York. That state now provides the right to alimony where a marriage has been annulled. Thus, to this extent at least, the annulment does not relate back to the marriage and obliterate it, as appellant here argues. Moreover, there are other more obvious legal sequelae of annulled marriages which, under the laws of various states, including New York, cannot be obliterated: for example, the rights of children. Such children are usually legitimate.[11] Thus it cannot now be said, as Chief Justice Cardozo, speaking for the New York Court of Appeals, once did, that annulment effaces a marriage "as if it had never been." Sleicher v. Sleicher, 251 N.Y. 366, 369, 167 N.E. 501, 502 (1929).[12]

We need not delineate all of the law of New York[13] relating to annulment or the law of the other states on the same subject.[14] We need only determine, considering the statutory term "remarriage" in the context in which it is used in the Act, and enlightened by the law of New York and the general family law on the subject, whether the Board's action in this case[15] has "warrant in the record" and a "reasonable basis in law." Nation-

---

8. Review of the Board's action is limited to the United States Courts of Appeals. 60 Stat. 735, 45 U.S.C. § 228k; 60 Stat. 738, 45 U.S.C. § 355(f).

9. See Report of the Social Security Board, House Document No. 110, 76th Cong., 1st Sess.; H.R.Rep. No. 1989, 79th Cong., 2d Sess., p. 9.

10. 70 Stat. 831–832, 42 U.S.C. § 402(g) (3).

11. New York Civil Practice Act, § 1135.

12. The doctrine of relation back, as announced in Sleicher, was modified significantly in Gaines v. Jacobsen, 308 N.Y. 218, 224, 124 N.E.2d 290, 294, 48 A.L.R. 2d 312, 316 (1954), after enactment of the New York Civil Practice Act, § 1140–a, permitting alimony after annulment.

13. For an excellent exposition of the law of New York on this subject, see Nott v. Folsom, S.D.N.Y., 161 F.Supp. 905 (1958), affirmed sub nom. Nott v. Flemming, 2 Cir., 272 F.2d 380 (1959).

14. See Keezer, Marriage and Divorce, ch. 14 (Bobbs-Merrill 1946); Nelson, Divorce and Annulment, § 31.01–70 (Callaghan 2d Ed. 1945).

15. When annulment cases involving facts different from those here presented,

al Labor Relations Board v. Hearst Publications, supra, 322 U.S. 131, 64 S.Ct. 861. We think it has.

Affirmed.

BASTIAN, Circuit Judge (dissenting).

As Judge WRIGHT states, the cases are divided on the construction of a provision of the Social Security Act similar to the provision of the Railroad Retirement Act here involved.[1]

The majority opinion is based largely upon the premise that agency determination of matters of law is entitled to weight. I think this is correct, and I have considered the case before us with that general rule of law in mind. However, since statutory construction is a judicial function, in the final analysis, the court may examine agency determination in matters of law, to determine whether or not it is correct. In this connection, the language of Judge Vinson, then of this court (later Chief Justice of the United States), in Railroad Retirement Board v. Bates, 75 U.S.App.D.C. 251, 252, 126 F.2d 642, 643 (1942), is particularly pertinent:

> "Although the Board argues that the question here is whether its interpretation of the Act is plainly erroneous, the issue we shall decide, as has been stated, is whether a person otherwise eligible for an annuity under section 2 is disqualified because he receives a pension under subsection 6(a). Inasmuch as the Board is familiar with problems in its field and has had experience and understands the Act which creates it, it is proper that weight should be given to its interpretations. None-

theless the question is a question of law, one of statutory interpretation, and that is a field in which courts are regarded as having some expertness just as administrative tribunals have special knowledge of the recurring factual patterns in their several spheres of activity. This is, apparently, the first decision the Board has made on the instant problem in accordance with its interpretation of the Act, and our attention has been called to only one similar situation. There is no long administrative interpretion of the Act as a whole nor of the sections with which we shall deal in particular. There has been no congressional re-enactment after an administrative interpretation. This factual situation is one on which the Act carries no positive directive terms; it is at least an interstitial situation. Thus, while according weight to the Board's conclusion and reasoning, in view of the nature of the question and the terms of the Act, we are free to affirm the District Court, although the Board's interpretation of the Act may not be plainly erroneous."

In this case, we have a judgment of a court of the State of New York (which is entitled to full faith and credit) declaring null and void from its inception the marriage entered into by appellant in 1959, allowing her to resume her maiden name, and awarding no alimony.

Bearing in mind the broad purposes of the Railroad Retirement Act and its humanitarian objectives, I would prefer to follow those cases [2] which hold that a marriage declared void *ab initio* does not

---

such as remarriages to bigamists or to mental incompetents, are presented to the Board, it is assumed that the Board will decide those cases on those facts.

1. 45 U.S.C. § 228e(b) (1958), in pertinent part reads: "A widow of a completely or partially insured employee * * * who at the time of filing an application for an annuity under this subsection will have in her care a child of such employee entitled to receive an annuity under subsection (c) of this section shall be entitled to an annuity

for each month * * *. Such annuity shall cease * * * upon her remarriage * * *."

2. Among such cases are the following: Yeager v. Flemming, 282 F.2d 779 (5th Cir., 1960), affirming D.C., 173 F.Supp. 316; Folsom v. Pearsall, 245 F.2d 562 (9th Cir., 1957), affirming D.C., 138 F. Supp. 939; Santuelli v. Folsom, 165 F. Supp. 224 (N.D.Cal.1958); Sparks v. United States, 153 F.Supp. 909 (D.C.Vt. 1957); Mays v. Folsom, 143 F.Supp. 784 (D.C.Idaho, 1956).

deprive a widow of her right to compensation under the Railroad Retirement Act after the marriage has been so declared by a court of competent jurisdiction. See Sparks v. United States, 153 F.Supp. 909 (D.C.Vt.1957), where the court, speaking of a similar provision in the Social Security Act, said:

"The ruling of the Administrator brings a result directly contrary to the purpose of the Act. A husband is under a legal duty to support his wife, and the widow's insurance benefits under this portion of the Act were designed to provide the widow with some security upon the death of her husband and the consequent loss of his support. [Citing cases.]

"This part of the Act is to be liberally construed to aid in the achievement of the purpose of the Act. [Citing case.]" At 912.

Carried to its logical conclusion, the decision of the Board would give rise to absurd results: Assume that annulment follows the development of the following hypothetical situations: Suppose a widow goes through a ceremonial marriage, not knowing that the man she married has a living wife from whom he was not divorced; or suppose a widow marries a person physically or mentally incapable of entering into the marital relationship. Is the widow to be deprived of her annuity in such cases? How does the present case differ from these instances? Here the court having jurisdiction has decreed the marriage to be void *ab initio*. I think the Board's view is based upon its inability to discern the difference in status of a woman who goes through a marriage ceremony and one who goes through an actual marriage with a person capable of marriage and free from fraud in entering into it. In the present case, the marriage between petitioner and Mr. Gloss had existed for over a quarter of a century at the time of his death.

I think the action of the Board was harsh and unreasonable, does not have reasonable basis in law, and should be reversed.