**Anna SADOWITZ, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, United State of America, Defendant.**

No. 63–C–989.

United States District Court
E. D. New York.

Feb. 18, 1964.

Edward T. Kruglak, New York City, for plaintiff.

Joseph P. Hoey, U. S. Atty., Eastern Dist. of New York, for defendant; Martin Wright, Asst. U. S. Atty., of counsel.

BARTELS, District Judge.

This is an action under Section 205(g) of the Social Security Act, as amended ("the Act"), (42 U.S.C.A. § 405(g)), providing for a judicial review of a final decision of the Secretary of Health, Education and Welfare ("Administrator"). The decision, rendered on July 8, 1963, denies the claim of plaintiff, a widow, for Social Security widow's benefits based upon the Social Security earnings record of William Sadowitz, her first husband (wage earner), on the ground, in substance, that she had "remarried" within

the meaning of Section 202(e) (1) of the Act, as amended (42 U.S.C.A. § 402(e) (1)), by her marriage to one Gabriel Pirozek (Pirozek).

The undisputed facts are as follows:

William Sadowitz, a wage earner covered by Social Security, died on October 20, 1954, and his widow (plaintiff) was awarded a lump sum death payment. On July 15, 1955, plaintiff married Pirozek, who deserted her on· or about May 29, 1958. Thereafter, on October 17, 1958, plaintiff instituted a suit in the Supreme Court of the State of New York against Pirozek to annul this marriage on the ground of fraud, in that Pirozek had concealed from the plaintiff his impotency at the time of the marriage and on the additional ground that Pirozek had never consummated the marriage. At the hearing she waived alimony. The State court entered an interlocutory decree of annulment on the ground of fraud, which became final on December 18, 1959. On July 7, 1961, plaintiff, having reached the age of 62, applied for widow's benefits by virtue of the earnings record of her deceased husband William Sadowitz, asserting that her second marriage to Pirozek had been annulled. The claim was denied on the ground that the plaintiff was not the unremarried widow of William Sadowitz. Upon appeal to the Appeals Council of the Social Security Administration, the decision of the Referee was affirmed.

Both parties have filed motions for summary judgment for the purpose of review. The sole issue is whether plaintiff's marriage to Pirozek is a remarriage within the meaning of Section 202 (e) of the Act, as amended (42 U.S.C.A. § 402(e)), despite the fact that the marriage was subsequently annulled.

Section 202(e) (1) of the Act, as amended, provides widow's insurance benefits to the widow of "an individual who died a fully insured individual after 1939, if such widow—(A) has not remarried" and (E) that the widow shall become so entitled until "the month preceding the first month in which any of the following occurs: she remarries * * *." What did Congress intend by "remarried"?

The Administrator relies upon Nott v. Flemming, 2 Cir., 1959, 272 F.2d 380, and plaintiff relies upon Yeager v. Flemming, 5 Cir., 1960, 282 F.2d 779, in support of their respective positions. Both cases reach diametrically opposite results upon facts which, for all relevant purposes, it seems to the Court are the same. Plaintiff insists that the present case is different and, moreover, that Yeager is applicable. An analysis of the two cases is therefore appropriate.

In Nott the court affirmed the lower court in refusing to reinstate the widow upon annulment, to her prior status of eligibility for Social Security benefits. The widow had remarried in January, 1955 and in July, 1955 her second husband had instituted an action in the New York state court for an annulment upon the ground that the widow had failed to consummate the marriage. An interlocutory decree of annulment became final on April 25, 1956. Since there was no definition of the term "remarried" as used in the statute, the court was compelled to refer to the state law for this purpose. It was made clear, however, that such reference was necessary only for the narrow purpose of determining "whether the widow has entered into a relationship that will entitle her under state law to support from her second husband", and not for the purpose of determining eligibility for Social Security benefits. Prior to the enactment in 1940 by the New York Legislature of Section 1140–a of the Civil Practice Act [1], the New York courts, by resorting to the fiction of "relation back", held that an annulment rendered a marriage void *ab initio*. Sleicher v. Sleicher, 251 N.Y. 366, 167 N.E. 501 (1929). By the enactment of Section 1140–a the New York Legislature authorized the courts in an action to annul a marriage to neverthe-

[1]. Domestic Relations Law, § 236.

less provide support for the wife. This provision was construed to permit even the guilty party to receive alimony. Johnson v. Johnson, 295 N.Y. 477, 68 N.E.2d 499 (1946). By this enactment the foundation for the fiction of "relation back" was eliminated so that an annulment of a marriage no longer revived a former husband's alimony obligation. Gaines v. Jacobsen, 308 N.Y. 218, 124 N. E.2d 290, 48 A.L.R.2d 312 (1954)[2]. Noting that the eligibility for Social Security benefits could not depend upon a body of state law, the Circuit Court concluded that the congressional purpose was reasonably clear that Congress intended that the widow by the act of remarriage under circumstances providing economic assistance after annulment, elected to accept the financial support of her second husband and was thus precluded from supplemental support from the Social Security Fund. Availability of alimony upon annulment[3] was the criterion.

In Yeager, decided a year later, a different conclusion was reached. The widow's first husband died in February, 1951 and she remarried in April, 1954. In December, 1954 she obtained from a Connecticut court a decree annulling the second marriage on the ground of fraud and awarding her a $3,000 property settlement. The court had power to grant alimony upon the annulment. The decree, however, provided that the parties were never validly married and that the marriage was void ab initio. The widow subsequently applied to the Social Security Administration for reinstatement of her widow's insurance benefits, which

was denied by both the 'Administrator and the lower court. The Circuit Court, in reversing, held that the widow was entitled to a revival of Social Security insurance benefits because the court was bound to accept the holding of the Connecticut court that the marriage was a complete nullity with no more status than if no act had been performed in connection with it. The argument that the Nott case applied because the Connecticut court had the power to grant alimony, was rejected on the ground that this concept would produce an incongruous statute.

Plaintiff argues that her case can be distinguished from Nott with respect to certain factual details (which the Court deems irrelevant) and that, moreover, Yeager, by construing the words "remarried" and "marries" to refer to a valid and subsisting marriage and not to a voidable marriage subsequently annulled, represents a more realistic and liberal approach. Superficially, the cases might be distinguished by pointing out that in Nott the state court held that there is no "relation back" and that an annulled marriage is void only from the date it is declared a nullity, whereas in Yeager the Connecticut court held that there was "relation back" and that an annulled marriage was void ab initio. The differences, however, between the two are much more fundamental. Nott holds that the meaning of the word "remarried" for Social Security eligibility does not depend upon whether the state law does or does not adopt the fiction of "relation back" with respect to the annulment[4] but upon congressional intent

2. See Nott v. Folsom, S.D.N.Y., 1958, 161 F.Supp. 905; Hahn v. Gray, 1953, 92 U.S.App.D.C. 188, 203 F.2d 625; Annot., 85 A.L.R.2d 249, 251 (1962).

3. It is pertinent to note that annulments have frequently been employed to escape either the religious consequences of a divorce or the necessity for a divorce when the same was unavailable, thus rendering the proceedings suspect. In the present case, for example, the plaintiff did not discover the impotency of her husband until

she was married for three years and then only after he deserted her. Moreover, the first complaint did not allege impotence but the husband's invalid divorce from his previous wife. Although the statute of limitations might have been available as a defense, the answer was withdrawn and the plaintiff withdrew her claim for alimony.

4. The doctrine of "relation back", to declare a marriage void, was never applied in every instance and was rejected when it

which indicates that a widow who elects to accept the support of her second husband, forfeits her rights to Social Security benefits. Yeager, on the other hand, finds congressional intent from the effect of an annulment under the state law to void a remarriage *ab initio*, regardless of the right of the widow to obtain support from the second husband in such a case.

It is interesting to note that the rationale of Nott has been accorded support in Gloss v. Railroad Retirement Board, 1962, 114 U.S.App.D.C. 177, 313 F.2d 568, which involved the interpretation of a similar provision of the Railroad Retirement Act. There the Board interpreted the statutory term "remarried" with respect to the application of the widow for reinstatement of pension rights. In its interlocutory decree of annulment the New York Supreme Court for Erie County provided that the second marriage was "null and void from its inception, on the ground of the fraud of the defendant." The Board, in interpreting the Act on a national basis, decided that an annulment of remarriage did not revive a widow's pension rights. In affirming this action the Board referred to the division between Nott and Yeager and pointed out that an annulment cannot relate back for all purposes, and that the Board was not required to "divine the nuances of the family law of the fifty states" and that "Congress presumed that when a widow remarried, her second husband would support her and, consequently, the fund created by the Act would be relieved of her dependence."

██ There is nothing in the present case distinguishing it from the Nott case, which, of course, is controlling upon this Court. It need only be added that upon review of the final decision of the Administrator, appropriate weight must be given to his construction of the term "remarried" as used in the statute. If it has "a reasonable basis in law", it must be accepted. National Labor Relations Board v. Hearst Publications, 1944, 322 U.S. 111, 131, 64 S.Ct. 851, 88 L.Ed. 1170.

Therefore, plaintiff's motion for summary judgment must be denied and defendant's motion for summary judgment dismissing the complaint must be granted.

Settle order within ten (10) days on two (2) days' notice.

---

conflicted with the interest of justice. United States v. Dininny, 2 Cir., 1958, 261 F.2d 517; Folsom v. Pearsall, 9 Cir., 1957, 245 F.2d 562.