Adam J. **BERTAMINI**, Petitioner,

v.

**RAILROAD RETIREMENT BOARD,**
Respondent.

No. 24247.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 8, 1970.

Decided Feb. 23, 1971.

Mr. Theodore E. Lombard, Washington, D. C., for petitioner.

Mr. Dale G. Zimmerman, Atty., Railroad Retirement Board, of the bar of the Supreme Court of Wisconsin, pro hac vice, by special leave of court, with whom Messrs. Myles F. Gibbons, General Counsel, and David B. Schreiber, Associate General Counsel, Railroad Retirement Board, were on the brief, for respondent.

Before WRIGHT and ROBINSON, Circuit Judges, and GORDON,* United States District Judge for the Eastern District of Wisconsin.

## PER CURIAM:

The Railroad Retirement Board determined that petitioner is not entitled to a disability annuity under Section 2(a) 5 of the Railroad Retirement Act (45 U.S.C. § 228b(a) 5 (1964)), and the question presented by this petition for review is whether substantial evidence supports the Board's finding that petitioner's physical condition is not such that he is "unable to engage in any regular employment." Petitioner has 19 years of service under the Act and is less than 60 years old. Under the circumstances, it is common ground between the parties that Section 2(a) 5 of the Act controls petitioner's application for disability annuity.

Petitioner's medical background shows a history of a back injury in 1942, a reinjury in 1944, and increasing difficulty with his lower back since that time. The medical records show a number of visits to the Veterans Administration out patient clinic by petitioner during the period 1963 to 1965. In 1965 he had a complete neurological examination at the Veterans Administration facility which resulted in the diagnosis "chronic lumbosacral strain—symptomatic" and other conditions not relevant here. Petitioner was confined in George Washington University Hospital from February 18, 1967 to March 11, 1967. The diagnosis at that time confirmed his lower back condition in terms of "degenerative lumbar intervertebral discs."

Petitioner's first application for disability annuity, filed on February 23, 1965, was denied on June 7, 1965. Petitioner returned to his railroad work for the Washington Terminal Company in 1966 for about 14 months until February 17, 1967, and on March 13, 1968 filed a new application for disability annuity. This second application was denied by the Board's Bureau of Retirement Claims on May 28, 1968, and the Appeals Council for the Board denied petitioner's appeal on November 1, 1968. In a 19-page opinion carefully reviewing all the facts and all of the law pertaining to petitioner's case, the Railroad Retirement Board affirmed the decision of the Appeals Council. It is this decision of the Board which is before this court for review under Section 11 of the Act (45 U.S.C. § 228k (1964)).

Section 2(a)5 of the Railroad Retirement Act provides, in pertinent part, as follows:

"§ 2(a) The following-described individuals, if they shall have been employees on or after the enactment date, and shall have completed ten years of service, shall * * * be eligible for annuities after they shall have ceased to render compensated service to any person, whether or not an employer as defined in section 1 (a) of this title (but with the right to

---

* Sitting by designation pursuant to 28 U.S.C. § 292(c) (1964).

engage in other employment to the extent not prohibited by subsection (d) of this section):

\* \* \* \* \* \*

"5. Individuals whose permanent physical or mental condition is such that they are unable to engage in any regular employment."

Pursuant to the authority granted by Section 10(b)4 of the Act (45 U.S.C. § 228j(b)4 (1964)), the Board promulgated the following regulation regarding the establishment of permanent disability for work "in any regular employment":

"An individual shall be deemed to be permanently disabled for work in any regular employment if he has a permanent physical or mental condition, as that term is defined in § 208.-10, and he is because of such condition unable to perform regularly, in the usual and customary manner, the substantial and material duties of any regular and gainful employment which is substantial and not trifling, with any employer, whether or not subject to the act."

20 C.F.R. § 208.17(a) (1970).

■ Section 11 of the Act (45 U.S.C. § 228k), through incorporation of the judicial review provisions of the Railroad Unemployment Insurance Act (45 U.S.C. § 355(f) (1964)), provides: "The findings of the Board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive."

This section has been interpreted uniformly as meaning simply that " \* \* \* the Board's decision should not be disturbed if supported by substantial evidence in the record and if not based on an error of law." Schafer v. Railroad Retirement Board, 7 Cir., 217 F. 2d 874, 875 (1954).[1] While this standard is applicable generally to all types of cases adjudicated by the Board, it has particular reference to a disability case which "is peculiarly a fact case, and \* \* \* it [is] peculiarly for the Board to say whether the inference to be drawn from the testimony as a whole [is] that plaintiff [is], or that he [is] not, totally and permanently disabled." Watts v. Railroad Retirement Board, 5 Cir., 150 F.2d 113, 115 (1945).

■ This court has studied the record in this case and the Board's decision with great care. The record reveals a railroad worker proud of the tradition of his calling who, when a disabling back injury threatened to end his career, refused to accept reevaluation of his job potential through rehabilitation and retraining and refused to seek other employment of which he was capable. The record clearly shows, with an abundance of evidence from at least six doctors, that petitioner does indeed have a lower back problem that is becoming more disabling with age.[2] But all save one of the doctors' reports and testimony, including his own personal physician's, indicate quite clearly that with his background petitioner would be capable of retraining for jobs involving bench

I. For similar statements regarding the scope of judicial review of decisions of the Board, see Gloss v. Railroad Retirement Board, 114 U.S.App.D.C. 177, 313 F.2d 568 (1962); Aldridge v. Railroad Retirement Board, 5 Cir., 285 F.2d 759 (1961); Ogle v. Railroad Retirement Board, 6 Cir., 238 F.2d 233 (1956).

2. The medical evidence generally is in agreement with the findings of Dr. Bush, petitioner's personal physician. Dr. Bush found that petitioner was suffering from "minimal degenerative and/or hypertrophic arthritis in the spine and hands

which need not be symptomatic" and was not "out of proportion to the physical activities of several years in his present work." Dr. Bush noted that the x-rays taken at George Washington University Hospital showed a "slight narrowing of the L-4, L-5 intervertebral disc space" with "no nerve root compression or disc protrusion." Dr. Bush's impression that the "degenerative disc disease in the lumbar area will continue to be symptomatic with the physical activity of his present employment" supports the Board's finding that "much of appellant's pain is

work and for other sedentary occupations.[3] The record is abundantly clear, too, that there is a demand in the Washington area for persons of petitioner's age and background with limited physical capacity to perform such jobs as radio or television repairman, guard, special policeman, and other types of watchman service.[4] Perhaps it is unkind to suggest to a man who has given his life to railroad service that he accept a sedentary job or retraining in a position which his limited physical condition permits him to perform. The suggestion, however, comes not from the court but from the Congress which passed this Act limiting disability annuities to those employees of petitioner's age and tenure[5] who are "unable to engage in any regular employment." 45 U.S.C. § 228b(a)5.

Under the circumstances, and appreciating the limited scope of judicial review afforded by the Act, this court has no alternative but to affirm the decision of the Board.

Affirmed.

associated with the heavy work which he did for many years."

3. For example, Dr. Bush stated:
  "It has been my impression that with this man's background he would be capable of training for bench work while sitting, as one might perform repairs on small electrical appliances, radio, TV, et cetera. It would be understood that in this type of work that actual handling of any heavy equipment or bending or stooping would have to be minimal and then very slowly progressed depending upon his tolerance of this type of physical activity. * * *"

4. The record shows that both the District Unemployment Compensation Board and the Virginia Employment Commission reported that they have "open orders for this type work now and were reasonably sure that they could place the applicant even with his alleged disability." As indicated *supra*, petitioner refused to consider other employment. The Board's finding that regular jobs were available

in the Washington area which petitioner could perform avoids the need to rule on his contention that an administrative denial of disability benefits is supported by substantial evidence only if the agency has introduced evidence identifying jobs in a particular geographic area for which the claimant might have a reasonable opportunity to be hired if he were to make a good faith effort to secure employment. *Compare* Duncan v. Railroad Retirement Board, 4 Cir., 375 F.2d 915 (1967); Gardner v. Earnest, 4 Cir., 371 F.2d 606 (1967).

5. In this connection it may be noted that the Railroad Retirement Act does provide, in § 2(a)4, 45 U.S.C. § 228b(a)4 (1964), annuities for individuals who are merely disabled for work in their usual occupations. To be eligible for such an annuity, however, an individual must have either reached the age of 60 or completed 20 years of service creditable under the Act.