Sophie NOTT, Plaintiff-Appellant,

v.

Arthur FLEMMING, Secretary of Health, Education and Welfare, United States of America, Defendant-Appellee.

No. 232, Docket 25375.

United States Court of Appeals Second Circuit.

Argued March 13, 1959.

Decided Dec. 1, 1959.

Arnold H. Fassler, New York City, for plaintiff-appellant.

Arthur H. Christy, U. S. Atty., Southern Dist. of New York, New York City (John A. Guzzeta, Asst. U. S. Atty., New York City, of counsel), for defendant-appellee.

Before WASHINGTON, WATERMAN and MOORE, Circuit Judges.

WATERMAN, Circuit Judge.

Under section 202(e) of the Social Security Act, 42 U.S.C.A. § 402(e), the widow of an insured wage earner is entitled to survivor's benefits. This case presents the issue of whether a widow who has lost her right to survivor's benefits by virtue of a subsequent ceremonial marriage regains this right when that marriage has been annulled by a decree of a New York state court.

The undisputed facts are as follows:

Appellant, Sophie Nott, was born on January 17, 1894. On November 6, 1915, she married Max Nott, with whom she lived until his death on September 14, 1949. In January 1955 she married Louis Klein. After three months Klein and appellant separated. In July 1955 Klein instituted an action for annulment in the Supreme Court of the State of New York, Bronx County. The asserted ground for annulment was appellant's failure to consummate the marriage. An interlocutory decree of annulment was entered January 25, 1956. The decree became final on April 25, 1956. On October 8, 1956 Mrs. Nott filed an application for a widow's benefits under the Social Security Act as the widow of Max Nott, who had been a fully insured wage-earner.[1] The application was denied on January 10, 1957. Having exhausted her administrative remedies, on November 4, 1957 appellant instituted an action in the District Court under 42 U.S.C.A. § 405 (g), for judicial review of the adverse determination. Both parties filed motions for summary judgment. The district court granted summary judgment for defendant, Nott v. Folsom, D.C.S.D.N.Y. 1958, 161 F.Supp. 905, and Mrs. Nott appeals.

We are called upon to construe Section 202(e) of the Social Security Act, 42 U.S. C.A. § 402(e), the relevant sections of which are as follows:

"(e)(1) The widow * * * of an individual who died a fully insured individual after 1939, if such widow—

"(A) Has not remarried,

* * * * * *

"(E) * * * shall be entitled to a widow's insurance benefit for each month, beginning with the first month after August 1950 in which she becomes so entitled to such insurance benefits and ending with the month preceding the first month in which any of the following occurs: she remarries * * *."

Resolution of the present case, then, depends upon the definitions given the words "remarried" and "remarries." These words are not defined in the Act and we must seek a meaning for them.

We agree with the district court's disposition of the present case, but for reasons to be set forth subsequently in this opinion we are not fully in accord with the emphasis which the district judge placed upon New York law in determining whether Mrs. Nott had "remarried" within the meaning of section 202(e). The court below relied upon Gaines v. Jacobsen, 1954, 308 N.Y. 218, 124 N.E.2d 290, 48 A.L.R.2d 312. There the New York Court of Appeals held that the first husband's alimony obligation, terminable upon the wife's remarriage, was not revived when the wife's second marriage was annulled. The Court of Appeals reasoned that the annulment decree did not relate back to annul the second marriage ab initio. Nevertheless, in the Gaines case the Court of Appeals recognized that the doctrine of the "relation back" of an annulment decree is a fiction whose applicability depends upon the particular problem at hand.[2] It is

---

1. Mrs. Nott did not become entitled to widow's benefits until she reached the age of sixty-two, 42 U.S.C.A. § 402(e) (1) (B), § 416(a) (2). Hence she made no application prior to her marriage to Louis Klein.

2. In United States v. Dininny, 2 Cir., 1958, 261 F.2d 517, 518, in view of the circumstances present there, we accepted the view that under New York law an annulment decree did relate back to prevent the wife's taking the proceeds of

clear that the factors [3] which may lead to a holding that an annulment decree does not relate back to revive a former husband's alimony obligation might be totally irrelevant in the event that a state court should be confronted with the issue of whether an annulment decree should relate back to revive a right to Social Security benefits. See Folsom v. Pearsall, 9 Cir., 1957, 245 F.2d 562, 565. It is also clear that this issue of whether social security benefits should be revived will be faced only by federal courts, never by state courts.[4] It seems most unlikely that Congress intended that eligibility for social security benefits should depend upon a body of state law that can never come into existence.

■■ Furthermore, we believe that the congressional purpose in terminating a widow's eligibility for social security benefits upon her remarriage is reasonably clear. A widow of a wage earner is made eligible for benefits in order that she may be assured of the continuance of that minimal level of support which the Social Security system is designed to provide; but by the act of remarriage she elects to accept the financial support of her second husband [5] and Congress apparently concluded that she should not be entitled thereafter to supplemental support from the Social Security Fund.[6] Thus reference to state law is necessary, but only for the narrow purpose of determining whether the widow has entered into a relationship that will entitle her under state law to support from her second husband. It is clear that in New York a female participant in a ceremonial marriage is entitled to support from her ostensible husband not only during the official existence of the marriage but also after its formal dissolution. Under section 1140–a of the New York Civil Practice Act (enacted Sept. 1, 1940) the court awarding an annulment decree may affix such directions for support "as justice requires." This provision has been authoritatively construed to permit even the "guilty" party to receive alimony. Johnson v. Johnson, 1946, 295 N.Y. 477, 68 N.E.2d 499. As the district court pointed out below, it is still possible for Mrs. Nott by petition to the New York courts

---

her former husband's National Service Life Insurance.

3. In the Gaines case the court recognized that once the divorced wife has been a party to a subsequent ceremonial marriage the former husband will feel free to reallocate his funds upon the reasonable assumption that the ceremonial event forthwith terminated his alimony obligations.

4. Under section 205(g), 42 U.S.C.A. § 405 (g), judicial review of the Secretary's decision denying benefits may be had only in the United States District Court of the plaintiff's residence, or, lacking any residence, in the District Court for the District of Columbia.

5. In Sparks v. United States, D.C.D.Vt. 1957, 153 F.Supp. 909, Judge Gibson suggested that unless annulment were held to revive a widow's benefits, a widow who was forced to remarry at gun point would be forever disqualified. Indeed such a widow should receive widow's benefits. We do not reach that problem here. We construe "remarried" as stating a relationship based upon some modicum of consent to living with the new husband and accepting his support.

6. Recent amendments to section 202(e), 42 U.S.C.A. § 402(e) (1959 Supp.) support the interpretation that Congress has been concerned primarily with the economic consequences of remarriage. In 1956 subsection (3) was added to provide that if a widow remarries and thereafter her new husband dies under such circumstances (here the reference was to the requirement of 216(c) (4) that the widow have lived with her new husband for a minimum period of one year) as to prevent her from qualifying for benefits as his widow, then the new marriage will be deemed not to have occurred. In 1958 this new subsection (3) was amended to recognize a less drastic definition of "widow" under 216(c), also amended that year, thereby only treating the second marriage as not having occurred if the new husband died within a year of the new marriage *and* was not a fully insured individual. Also in 1958 another subsection, subsection (4), was added to provide that when a widow remarries an individual entitled in his own right to survivor's or child's disabilty benefits the widow shall not lose her right to her survivor's benefits under section 202(e) despite the fact of her remarriage.

to obtain alimony from Louis Klein. Thus the state law applicable here differs from that applicable in the cases upon which appellant relies—Folsom v. Pearsall, 9 Cir., 1957, 245 F.2d 562, affirming D.C.N.D.Cal.1956, 138 F.Supp. 939; Mays v. Folsom, D.C.D.Idaho 1956, 143 F.Supp. 784; Sparks v. United States, D.C.D.Vt.1957, 153 F.Supp. 909. In those cases it was clear that, though the ostensible husband may have had an obligation to support during the time the marriage was formally in effect, it was also clear that no obligation to support could be enforced against him after the marriage had been dissolved by the annulment decree.

Judgment affirmed.