**Lillian R. YEAGER, Appellant,**

v.

**Arthur S. FLEMMING, Secretary of Health, Education and Welfare of the United States, Appellee.**

No. 18020.

United States Court of Appeals Fifth Circuit.

Oct. 3, 1960.

Philip T. Weinstein, Arthur B. Cunningham, Miami, Fla., for appellant.

Douglas A. Kahn, Atty., Alan S. Rosenthal, Dept. of Justice, Washington, D. C., George Cochran Doub, Asst. Atty. Gen., E. Coleman Madsen, U. S. Atty., Miami, Fla., for appellee.

Before CAMERON, BROWN and WISDOM, Circuit Judges.

CAMERON, Circuit Judge.

Appellee, the Secretary of Health, Education and Welfare, thus states the case he conceives to be presented by this appeal:

"This action was brought by appellant Lillian R. Yeager against

Arthur S. Flemming, Secretary of Health, Education and Welfare, under Section 205(g) of the Social Security Act, 42 U.S.C. [§] 405(g), to obtain judicial review of a final decision of the Secretary disallowing appellant's claim for reinstatement of her widow's insurance benefits which had been terminated pursuant to Section 292(e) [202(e)] of the Act, 42 U.S.C. [§] 402(e). On May 12, 1959, the United States District Court for the Southern District of Florida rendered an opinion affirming the Secretary's determination that appellant was not entitled to have her insurance benefits reinstated. (Note: The opinion is reported at D.C., 173 F.Supp. 316.) * * * A judgment in accordance with the opinion was entered on May 18, 1959, and appellant filed a notice of appeal on June 6, 1959. * * *

"The undisputed facts are as follows:

"Appellant's first husband, Charles Yeager, died on February 10, 1951 * * *. From that date until March 1954, she received monthly widow's insurance benefits. * * * In April 1954, appellant married Harley Blodgett and her insurance payments were thereupon terminated * * *. Subsequently, on December 10, 1954, appellant obtained from a Connecticut state court a decree annulling her second marriage on the ground of fraud and awarding her a $3,000 property settlement from her husband 'in lieu of all other claims'

* * *. Appellant then requested the Social Security Administration to reinstate the insurance benefits that she had received prior to her second marriage * * *. Appellant's application was denied by the Secretary, after a full hearing, on July 16, 1956. * * *

"Appellant then instituted this proceeding. The district court remanded the cause to the Secretary for the consideration of new and additional evidence (i. e., the 'Nunc Pro Tunc' order of the Connecticut court * * *) and on June 30, 1958, in a supplemental decision, the Secretary again denied appellant's claims * * *. On May 18, 1959, the court below affirmed this denial. * * *

"There are no factual issues in this action. The sole question here (as in the district court) is whether a voidable marriage that was subsequently annulled by a court which had the power to award alimony in annulment proceedings (and in fact did award a property settlement) constituted a 'remarriage' within the meaning of that term as used in Section 202(e) of the Social Security Act. * * * "

The parties agree that appellant's status as to marriage is determined by Connecticut statutes and decisions. Both parties quote also the pertinent portion of the Social Security Act and of the General Statutes of Connecticut, and these are copied in the margin from the appendix to the appellee's brief.[1]

1. "42 U.S.C.A. 402(e) (1) provides in part:
   "The widow * * * of an individual who died a fully insured individual after 1939, if such widow—
   "(A) has not remarried
   *    *    *    *    *
   shall be entitled to a widow's insurance benefit for each month, beginning with the first month after August 1950 in which she becomes so entitled to such insurance benefits and ending with the month preceding the first month in which any of the following occurs: she remar-

ries * * * or becomes entitled to an old-age insurance benefit equal to or exceeding three-fourths of the primary insurance amount of her deceased husband.
   "General Statutes of Connecticut (1958 Rev.), Section 46-28 provides:
   "Whenever from any cause any marriage is void or voidable under the laws of this state or of the state in which such marriage was performed, the superior court may, upon complaint, pass a decree declaring such marriage void, and may thereupon make such order in relation to any child of such marriage and

In concluding that the Secretary had reached the correct decision in holding here that the second marriage of Mrs. Yeager barred her right to recover, the court below stated in part:

"The legal question involved in this dispute is whether the claimant's rights to mother's social security insurance benefits, which were awarded to her as the widow of a wage earner and which were terminated by reason of her remarriage, are revived upon an annulment of the remarriage, even though the remarriage was not void, but voidable."

This concept of what was before the court below does not, in our view, give proper recognition to the terms of the order entered by the Superior Court of Hartford, Connecticut, which all parties agree determines the rights of the parties.[2]

By this proceeding, the legality and effectiveness of which are not challenged, the Connecticut court of competent jurisdiction declared that it had, at the initial hearing, found that the parties, in spite of the purported ceremony of marriage, were in reality never validly married; that no marriage ever existed between the appellant here and Harley Erne Blodgett; and that the *purported* marriage was, by the nunc pro tunc order, declared to be null and void *ab initio*. It seems to us that the court could not have used any plainer language to indicate that it was holding the marriage not voidable, but void from the very moment it was undertaken. If the purpose and intent of the Connecticut court is to be followed, therefore, we are bound to accept that the marriage was declared to be a complete nullity, to have been erased, and to have no more status or validity than if no act had been performed in connection with it. See Sparks v. United States and Folsom, Secretary, etc., D.C. Vt.1957, 153 F.Supp. 909, and Folsom v. Pearsall, 9 Cir., 1957, 245 F.2d 562, affirming decision of the District Court of the Northern District of California, 138 F.Supp. 939.

Appellee, after discussing at some length the decision of the Second Circuit in Nott v. Flemming, 1959, 272 F.2d 380, affirming D.C.S.D.N.Y., 161 F.Supp. 905, closes his brief on this note:

"Appellant attempts to distinguish Nott on the basis that in that case, the court relied on a continuing obligation of the husband to support

concerning alimony as it might make in a proceeding for a divorce between such parties if married."

2. "Whereas, on the 17th day of November, A.D. 1954 the plaintiff herein, by writ and complaint commenced an action for annulment and for a change of plaintiff's name, against the defendant herein, and

"Whereas, on the 10th day of December 1954 the Court entered its Order granting the relief sought, and

"Whereas said Order was entered on a printed form used and provided for in such cases, and

"Whereas, paragraph numbered '1' of said Order recites the following:

" '1. The plaintiff whose maiden name was Lillian Roseen Yeager, was lawfully to the defendant married on the 8th day of April, 1954', and,

"Whereas, *the wording of said paragraph was contrary to the intent of the Court for the reason that the Court* had found that the parties, in spite of the purported ceremony of marriage, were in reality never validly married, each to the other, and,

"Whereas, the Court found that no marriage ever existed or had existed between the parties, it is now therefore hereby

"Adjudged and Ordered as follows:

"1. That paragraph numbered '1.' is removed from said Order and the following is inserted in lieu thereof:

" 'That the plaintiff whose maiden name was Lillian Roseen Yeager entered into a marriage ceremony with the defendant on the 8th day of April, 1954.'

"2. *That said purported marriage be and it hereby is declared to be null and void ab initio.* * * *

"3. That this Order shall be Nunc Pro Tunc, and *effective as of the 10th day of December 1954,* and in all other respects said Order of December 10, 1954, is hereby ratified and confirmed." [Emphasis supplied.]

the wife after the annulment, while here there is no obligation on appellant's husband. This distinction is completely unfounded. As previously noted, the claimant in Nott also had not received any alimony in her annulment decree. 161 F.Supp. at page 909. In Nott, the court grounded its decision on *the power* of the New York court to grant alimony in the claimant's annulment decree, irrespective of whether she actually received it. Similarly, here, it is immaterial whether appellant received any alimony in her annulment decree. The critical factor is that the Connecticut court had *the power* to grant it. Indeed, the *ratio decidendi* of Nott applies with even greater force to the instant action, since appellant actually received a property settlement." [3]

Under this argument no citizen of Connecticut whose marriage was declared null and void could ever be entitled to a widow's insurance benefits, because the Connecticut courts are invested with power to allow alimony. This would be true even if the suit should be filed and the nullifying decree should be entered on the same day of the second marriage. We do not believe that Congress intended to enact such an incongruous statute. Its provisions apply with equal force to all of the citizens of all of the states. Such a concept would rule citizens of Connecticut who were led through fraud into a marriage ceremony adjudged void *ab initio* out of the possibility of sharing in a program which the courts have declared should be liberally enforced.[4]

Appellant was entitled to be treated just as if the marriage to Blodgett had never occurred. The judgment of the court below is, therefore, reversed and the cause is remanded for the entry of a decree in consonance with this opinion.

Reversed and remanded.

---

3. Appellee casually refers here, and in another place in his brief, to $3,000 which the Connecticut court found to be a property settlement. It is not contended that it represented a payment of alimony, or that Blodgett was ever ordered to pay or had paid any alimony to the appellant. We therefore forego any further discussion of this item.

4. Folsom v. Poteet, 9 Cir., 1956, 235 F. 2d 937; Shroeder v. Hobby, 10 Cir., 1955, 222 F.2d 713; Sparks v. United States, supra.