United States Court of Appeals,

Fifth Circuit.

No. 92-4689

Summary Calendar.

Hazel M. HARRIS, Petitioner,

v.

RAILROAD RETIREMENT BOARD, Respondent.

Oct. 1, 1993.

Petition for Review of an Order of the Railroad Retirement Board.

Before JOLLY, WIENER, and EMILIO M. GARZA, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Hazel M. Harris challenges an order of the Railroad Retirement Board,[1] issued pursuant to the Railroad Retirement Act of 1974, 45 U.S.C. §§ 231-231v (1988 & Supp. III 1991), and its 1981 amendment found in the Omnibus Reconciliation Act of 1981, Pub.L. No. 97-35, § 1129(f), 95 Stat. 357, 642 (1981). Mrs. Harris had received a widow's annuity under the Railroad Retirement Act until she remarried. That marriage has now been annulled. We are called upon to determine whether the annuity should be revived under these facts and, if so, at what date and in what amount. Construing the statute, we affirm in part, allowing the annuity, effective from the date of annulment, and we reverse in part, directing that payments be calculated under the method applicable at the time of the widow's original award.

I

In October of 1981, Mrs. Harris was awarded a monthly widow's annuity under section 2(d)(1)(i) of the Railroad Retirement Act of 1974, effective June 1981, based on the earnings of her late husband, Edward T. Harris, a former railroad employee. Mrs. Harris was drawing approximately $127.00 a month in widow's benefits when she married Robert C. Reid on December 25, 1988. In

---

[1]The Railroad Retirement Board is both the respondent and the issuer of the order below. When referring to it as respondent, we will call it the "Agency." When referring to them as the issuer of the prior opinion, we will call it the "Board."

accordance with the provisions of section 5(c)(5) of the Railroad Retirement Act, her widow's annuity was terminated.

On February 9, 1989, Mrs. Harris's marriage to Mr. Reid was annulled under Texas law, based on Mr. Reid's lack of mental capacity. Following this annulment, Mrs. Harris's annuity entitlement was reinstated, effective as of the date of the annulment. The calculation of her annuity, however, was made under a new statutory provision that changed the computation of the benefit for annuity awards granted on or after October 1, 1986. The new computation provided Mrs. Harris the handsome monthly benefit of $1.08.

## II

Mrs. Harris filed a timely appeal with the Bureau o f Hearings and Appeals on February 7, 1991. The Bureau held no hearing because the issue was a matter of law. The Hearings Officer, in a decision dated July 24, 1991, ruled that Mrs. Harris, having undergone an annulment of a voidable marriage, must establish eligibility for a widow's annuity as of the date of the decree annulling the remarriage. The decision stated that, as of November 1988, Mrs. Harris was entitled to a rate of $126.73 a month. The decision further stated, however, that applying the current computation method, Mrs. Harris was entitled to receive only $1.08 a month. Following the July 1991 decision, Mrs. Harris appealed to the Railroad Retirement Board, and the Board issued their decision affirming and adopting the decision of the Hearings Officer on May 14, 1992. As a result of that decision, Mrs. Harris filed this petition for review.

## III

We have previously established the standard of review for such appeals. The Board's findings of fact are conclusive, as long as they are supported by substantial evidence in the record. 45 U.S.C. § 355(f) (1988); *McCoy v. Railroad Retirement Board,* 935 F.2d 87, 88 (5th Cir.1991); *Elzy v. Railroad Retirement Board,* 782 F.2d 1223, 1225 (5th Cir.1986) (per curiam); *Kurka v. United States Railroad Retirement Board,* 615 F.2d 246, 249-50 (5th Cir.1980). In this case, however, the facts are not in dispute, and we review the Board's construction of the law *de novo. McCoy,* 935 F.2d at 88.

The statute at issue is the Railroad Retirement Act of 1974, 45 U.S.C. §§ 231-231v (1988 & Supp. III 1991). We must, first, consider the application of the terms "a widow ... who has not remarried," 45 U.S.C. § 231a(d)(1)(i), to the circumstances of Mrs. Harris. She contends that because her 1988 marriage to Mr. Reid was considered void *ab initio* under Texas law, she should be entitled to receive her survivor benefits under the Railroad Retirement Act as if she had never "remarried." She contends that the payments should relate back to the beginning date of her marriage to Mr. Reid, the time the payments were terminated. The Agency, however, urges a different effect of the annulment. The Agency acknowledges that Mrs. Harris's annuity benefit should be reinstated because the annulment effectively voided her "remarriage" under the statute. The Agency contends, however, that the payments should be effective from the date the marriage was annulled—not from the date that the marriage began.

In addition, Mrs. Harris asserts that her benefit payments should be calculated under the old formula that initially determined the amount of her annuity. Again, she argues that the annulment of her marriage should put her in the position she would have enjoyed under the Railroad Retirement Act had she never married Mr. Reid. The Agency, on the other hand, asserts that her annuity should be calculated using a new statutory provision that changed the computation of the benefit. The statutory provision that we must construe states that the new method of calculation of benefits is applicable "to all awards made on or after October 1, 1986." Omnibus Reconciliation Act of 1981, Pub.L. No. 97-35, § 1129(f), 95 Stat. 357, 642 (1981).

A

Both the Agency and Mrs. Harris contend that the annulment of a widow's second marriage, which was voidable in Texas due to the mental incapacity of her second husband, revives the widow's right to an annuity under the Railroad Retirement Act. We agree with this conclusion.

Section 2(d)(4) of the Railroad Retirement Act, 45 U.S.C. § 231a(d)(4) (1988), defining who is a widow of a deceased employee under the Act, incorporates by reference the definition contained in section 216(h) of the Social Security Act. 42 U.S.C. § 416(h) (1988 & Supp. III 1991). Section 216(h) looks to relevant state law to determine an individual's status as a widow. *See id.; see also*

*De Sylva v. Ballentine,* 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415 (1956). The Texas Court of

Appeals held in the case of *Bruni v. State,* 669 S.W.2d 829 (Tex.App.—Austin 1984, no writ), that

"[o]nce avoided by annulment, a voidable marriage is held to be void *ab initio.*" *Id.* at 835 (citing

*Home of the Holy Infancy v. Kaska,* 397 S.W.2d 208, 213 (Tex.1965)).

In 1960, we set a clear precedent for our decision today when we decided whether social

security insurance benefits[2] should be revived following an annulment under Connecticut law. We

determined that because the annulment caused the voidable marriage to become void *ab initio* under

Connecticut law, the widow's social security benefits that were terminated by reason of remarriage

should be revived upon annulment of the remarriage. *Yeager v. Flemming,* 282 F.2d 779 (5th

Cir.1960). Our ruling is the same today: Because, under Texas law, annulment caused Mrs. Harris's

voidable marriage to become void *ab initio,*[3] Mrs. Harris is restored to her previous status as widow

and should, once again, receive annuity benefits under the Railroad Retirement Act.[4]

B

We next consider whether Mrs. Harris should receive annuity payments for the period during

her annulled marriage to Mr. Reid. In other words, the question is whether the annuity payments

---

[2]Benefits are payable to survivors of wage earners under the Social Security Act in the same fashion as under the Railroad Retirement Act. Compare 42 U.S.C. 402(e) (1988 & Supp. III 1991) with 45 U.S.C. 231a(d) (1988). Cases under the Social Security Act have served as guides for the Railroad Retirement Act previously. *See Gloss v. Railroad Retirement Board,* 313 F.2d 568 (D.C.Cir.1962).

[3]We recognize later in this opinion that *Bruni* is only the general rule in Texas. Nonetheless, for the purpose of this issue, we hold that annulment does serve to restore Mrs. Harris to the status that she held before the marriage as a qualifying widow under the Railroad Retirement Act.

[4]The Ninth Circuit also reached this conclusion in two cases under the Social Security Act. *See Purganan v. Schweiker,* 665 F.2d 269 (9th Cir.1982); *Folsom v. Pearsall,* 245 F.2d 562 (9th Cir.1957). Both the Second Circuit and the District of Columbia Circuit, however, reached the opposite conclusion in two similar cases in 1959 and 1962, respectively. They determined that the annuity payments in question in those cases should not revive. They based their decision, in part, on the fact that the applicable state law provided the right to alimony where a marriage had been annulled. *Gloss,* 313 F.2d at 570; *Nott v. Flemming,* 272 F.2d 380, 382-83 (2d Cir.1959). This circuit, however, specifically rejected such reasoning and made alimony rights irrelevant through our ruling in *Yeager,* 282 F.2d at 782. Nonetheless, Texas law does not provide for permanent alimony. *Francis v. Francis,* 412 S.W.2d 29, 32 (Tex.1967). The outcome of the present case, therefore, would be the same under the authority of *Gloss* and *Nott* as it is under *Yeager.*

should be paid retroactively, dating back to the date of the remarriage, or only prospectively, from the date of the annulment.

As previously established, we must look to state law to determine family law questions relevant to the Railroad Retirement Act. Mrs. Harris relies exclusively on the statement in *Bruni v. State,* 669 S.W.2d 829 (Tex.App.—Austin 1984, no writ), that "[o]nce avoided by annulment, a voidable marriage is held to be void *ab initio.*" *Id.* at 835 (citing *Home of the Holy Infancy v. Kaska,* 397 S.W.2d 208, 213 (Tex.1965)). The relation back doctrine, however, is not an absolute in Texas. In *Kaska,* the case cited by *Bruni,* the Supreme Court of Texas stated:

> We generally think of annulment as placing the parties in the same position as if they had never married. In Garcia v. Garcia, the court stated that a suit for annulment presumes that there never was a valid marriage and that it should therefore be declared void....
>
> In more recent and better reasoned cases, the courts have recognized that the doctrine of relation back is a legal fiction which must be utilized with some discrimination where the annulment of a marriage is involved....
>
> The rule that an annulled marriage is void *ab initio* was also considered in *Sefton v. Sefton,* where the Supreme Court of California said:
>
> > * * * [T]he doctrine of "relation back" [with respect to annulments of marriages] is not without its exceptions. The doctrine was fashioned by our courts to do substantial justice as between the parties to a voidable marriage. It is a mere legal fiction which has an appeal when used as a device for achieving that purpose. The test for determining the applicability of the doctrine as applied to voidable marriages is whether it effects a result which conforms to the sanctions of sound policy and justice as between the immediate parties thereto, their property rights acquired during that marriage and the rights of their offspring. * * *

*Kaska,* 397 S.W.2d at 212 (citations omitted). Thus, in *Kaska,* the Supreme Court of Texas applied the reasoning of the California court and looked through the "fiction" of annulment for the purpose of determining the legitimacy of children. Furthermore, post-*Bruni* cases continue to recognize that annulment is a legal fiction and that the relation-back doctrine is a limited concept. *See Fernandez v. Fernandez,* 717 S.W.2d 781, 782 (Tex.App.—El Paso 1986, writ dism'd) ("[A]lthough a voidable marriage is void ab initio, it is really not void for all purposes, such as division of property and legitimacy of children.").

Although the statute directs us to look to Texas law for applicable family law matters, our review of Texas law is inconclusive for our immediate purpose today: the Texas courts, of course,

never have had and likely never will have the opportunity to decided how its doctrine of relation back should apply to the Railroad Retirement Act or to the similar provisions of the Social Security Act. See 42 U.S.C. § 405(g) (1988); 45 U.S.C. § 355(f) (Supp. III 1991). The federal courts, therefore, must determine these questions of retroactivity.

Although the Fifth Circuit has never addressed this question, the United States District Court for the District of Arizona, applying Texas law, decided a similar issue arising under the Social Security Act *Gartland v. Schweiker,* No. CIV-80-339-TUC-RMB, 1982 WL 171060 (D.Ariz. March 29, 1982). Gartland received social security payments that were designed to terminate upon her marriage. In 1972 she married, but she continued to receive the payments for several years. Finally, in 1979, the marriage was annulled. The district court reasoned that under Texas law, the voidable marriage was valid until it was annulled, and, therefore, Gartland had been "overpaid" for the period before the marriage was annulled.

The Ninth Circuit has also determined that under the Social Security Act, when a voidable remarriage is annulled, the benefit payments are revived and are paid only from the date of the annulment forward. *Purganan v. Schweiker,* 665 F.2d 269 (9th Cir.1982). The Ninth Circuit stated that although annulment under California state law "operates to relate back and "erase the marriage and all its implications from the outset,' such relation back applies only when it operates to achieve justice as between the parties to the marriage or otherwise promotes sound policy." *Id.* at 270 (citing *Sefton v. Sefton,* 45 Cal.2d 872, 874, 291 P.2d 439, 440 (1955), the case quoted by the Supreme Court of Texas in *Kaska* ). The Ninth Circuit went on to reason that in order to promote sound policy, "the marital status that actually existed during the months in question [should] determine[ ] Appellant's entitlement to social security benefits." *Id.* at 271.

We agree with the district court's application of Texas law in *Gartland,* and we adopt the reasoning of the Ninth Circuit in *Purganan.* Annulment, under Texas law, is generally thought to render a marriage void *ab initio.* But the law of relation back in Texas is a limited concept; "[it] is a legal fiction which must be utilized with some discrimination where the annulment of a marriage is involved." *Kaska,* 397 S.W.2d at 212. We therefore hold today, under the Railroad Retirement Act,

that although Mrs. Harris's annulment restored her to her previous status as widow, her marriage was valid until it was annulled.[5] We look through the legal fiction of annulment and recognize that Mrs. Harris's marital status that actually existed before the annulment determines her entitlement to Railroad Retirement benefits during those months. The annuity payments should be reinstated only prospectively, from the date of annulment.[6]

C

The final issue present ed is one of first impression: When annuity payments that were originally awarded under the Railroad Retirement Act in June 1981 are terminated, and then reinstated in 1989 after the annulment of a voidable remarriage, should the payments after the annulment be calculated based on a statute applicable "to all awards made on or after October 1, 1986?" Omnibus Reconciliation Act of 1981, Pub.L. No. 97-35, § 1129(f), 95 Stat. 357, 642 (1981).

"We begin with the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself." *Consumer Product Safety Com. v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). The statute in question states that the new computation

> shall take effect October 1, 1981, with respect to awards made on or after that date in cases in which the employee did not begin receiving an annuity under section 2(a)(1) of the Railroad Retirement Act of 1974 before October 1, 1981, and did not die before that date, and to all awards made on or after October 1, 1986.

Omnibus Reconciliation Act of 1981, Pub.L. No. 97-35, § 1129(f), 95 Stat. 357, 642 (1981).

---

[5]We have stated previously in this opinion that such an annulment revives a survivor's annuity payments under the Railroad Retirement Act, following the general rule that annulment voids a marriage *ab initio,* and following the Fifth Circuit precedent in *Yeager.* Recognizing that relation back is a limited concept in no way diminishes that reasoning. Annulment "relates back" to restore Mrs. Harris to the status that she held prior to her remarriage as a widow qualified for an annuity under the Railroad Retirement Act, but we look through the fiction of annulment and recognize that Ms. Harris did not regain that status until the date of her annulment.

[6]This result is also consistent with the dicta found in *Legory v. Finch,* 424 F.2d 406 (3d Cir.1970). In *Legory,* however, the Third Circuit espoused the support analysis of *Nott,* 272 F.2d at 382-83 and *Gloss,* 313 F.2d at 570. As previously discussed, the Fifth Circuit rejected such reasoning and made alimony rights irrelevant through our ruling in *Yeager,* 282 F.2d at 782. Nonetheless, Texas law does not provide for permanent alimony. *Francis v. Francis,* 412 S.W.2d 29, 32 (Tex.1967). The outcome of the present case, therefore, would be the same under the reasoning of *Legory* as it is under *Purganan.*

The Agency emphasizes that the statute applies to "all awards made on or after October 1, 1986" regardless of when the employee died. It asserts, therefore, that when Mrs. Harris's award was reinstated in 1989, the new computation should apply even though her former husband, Edward T. Harris, died prior to October 1, 1981.

The Agency, however, fails to recognize that not only did Mr. Harris die before October 1, 1981, but also Mrs. Harris actually began receiving an annuity before that date. It was at that time that Mrs. Harris's "award" was "made." Following the annulment of her remarriage, Mrs. Harris's annuity award was merely "revived" or "reinstated." *See Legory v. Finch,* 424 F.2d 406, 411 (3d Cir.1970); *Yeager v. Flemming,* 282 F.2d 779, 781 (5th Cir.1960); *Folsom v. Pearsall,* 245 F.2d 562 (9th Cir.1957); *see also Gloss v. Railroad Retirement Board,* 313 F.2d 568, 569-70 (D.C.Cir.1962) (following inapplicable support theory, but couching question with words "revive" and "reinstated."); *Nott v. Flemming,* 272 F.2d 380, 382 (2d Cir.1959) (same).

The effective dates in the statute, which were emphasized by the Agency, apply in a different situation. In order to qualify for an annuity under section 2(d)(1)(i) of the Railroad Retirement Act, 45 U.S.C. § 231a(d)(1)(i) (1988), an employee's surviving spouse not only must remain unmarried, but she must also meet certain age requirements. *See id.* If an employee died prior to October 1, 1981, but that employee's surviving spouse did not reach the required age until after October 1, 1986, that survivor's annuity would be calculated using the new computations. In other words, in that case, the annuity would be an "award[ ] made ... after October 1, 1986," and the date of the employee's death would be irrelevant.

The case at bar, however, is plainly distinguishable from such circumstances. In June 1981, Mrs. Harris became fully qualified to receive an annuity under the Railroad Retirement Act. At that time, the Agency "made" an annuity "award." Mrs. Harris remained so qualified until the date that she married Mr. Reid. As we have stated earlier, the annulment that followed effectively restored her to the status that she held immediately prior to that remarriage. In other words, effective with the date of the annulment, Mrs. Harris once again became a "widow ... who has not remarried and who ... [has] attained the [required] age." 45 U.S.C. § 231a(d)(1)(i) (1988). Accordingly, her annuity was

revived, effective with the date of the annulment, and it should be calculated in the same manner as it was calculated before its suspension.

IV

For the forgoing reasons, the Order of the Railroad Retirement Board regarding Mrs. Hazel M. Harris's right to annuity payments under the Railroad Retirement Act is

AFFIRMED in part and REVERSED in part.