

OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

JOHN CORNYN

January 12, 2001

The Honorable Michael P. Fleming
Harris County Attorney
1019 Congress, 15th Floor
Houston, Texas 77002-1700

Opinion No. JC-0328

Re: Whether penalties and interest on delinquent property taxes are canceled in whole or in part if no notice has been sent as section 33.04(b) of the Tax Code requires (RQ-0255-JC)

Dear Mr. Fleming:

A taxing unit's tax collector, "in each year divisible by five," must mail written notice (the five-year notice) to a property owner whose property taxes have been delinquent more than one year. TEX. TAX CODE ANN. § 33.04(b)(1) (Vernon Supp. 2000).[1] The property owner may raise the collector's failure to provide the required five-year notice as an affirmative defense in a suit to collect the tax. *See id.* § 33.04(d). When the collector at last delivers a required five-year notice, penalties and interest are "reinstated prospectively" and begin to accrue "on the first day of the first month that begins at least 21 days after the date the collector delivers the subsequent notice." *Id.* § 33.04(e). Where a tax collector did not deliver a five-year notice until nineteen years after the tax accrued, you ask what portion of the penalty and interest the property owner must pay.[2] The property owner owes only that portion of the penalty that begins to accrue on the first day of the first month beginning at least twenty-one days after the collector delivers the notice if the delinquent tax is not paid by that time. *See id.* § 33.011(a)(1); *see also id.* § 33.04(f) (stating that notice is presumed to be delivered when it is deposited in regular first-class mail, postage prepaid, and addressed to appropriate person). And, assuming that the legislature constitutionally may waive the collection of interest that has accrued since August 26, 1991, the property owner owes only that portion of the interest that begins to accrue on unpaid tax on the first day of the first month beginning at least twenty-one days after the collector delivers the notice. *See* TEX. CONST. art. III, § 55; TEX. TAX CODE ANN. § 33.011(a)(1) (Vernon Supp. 2000).

Your request concerns approximately fifty-three 1981 tax accounts that were not paid until at least 1999:

---

[1]We note that House Bill 490, filed January 8, 2001, is pending before the 77th Texas Legislature, and if passed as introduced, will repeal section 33.04 of the Tax Code. *See* Tex. H.B. 490, 77th Leg., R.S. (2001) (Introduced version).

[2]*See* Letter from Honorable Michael P. Fleming, Harris County Attorney, to Honorable John Cornyn, Texas Attorney General (June 30, 2000) (on file with Opinion Committee) [hereinafter Request Letter].

> In 1981, U.S. Homes owned [a] multi-tract property and failed to pay the 1981 taxes. In 1982, U.S. Homes requested a replat of the property and[,] apparently, an entry error was made at the time of that replat. The error resulted in the omission of the then[-]delinquent taxes from the newly created accounts. Instead, the old account numbers continued to reflect the delinquent taxes, penalties[,] and interest. Subsequently, these properties were sold by the developer. Apparently, the new owners were not provided the old account numbers and had no knowledge of any delinquent taxes at the time they purchased the propert[ies]. The new owners' names and addresses were properly recorded under the new account numbers and have been known by the tax office since that time, as they correctly appeared on the tax rolls, and all subsequent tax years are current. Meanwhile, the delinquencies were carried forward on the delinquent tax rolls under the old account numbers, with the previous owner's name, U.S. Homes, Inc., with no address information. Consequently, no delinquent tax notices for the 1981 taxes have been mailed to any property owners of record since 1982, and the taxes owed prior to the replat, along with the penalties and interest which have accrued thereon, remain outstanding.[3]

In a few instances in which U.S. Homes financed the sales to new owners, you indicate that the owners paid taxes to U.S. Homes, but U.S. Homes failed to forward the tax payments to the tax assessor. *See* Memorandum, note 2, at 1 n.1. After U.S. Homes filed for bankruptcy, the 1981 taxes were never paid. *See id.* The county finally notified the correct property owners of the delinquent tax, penalties, and interest in August 1999, although the tax assessor did not mail the requisite five-year notices until May 2000. *See id.* at 1; TEX. TAX CODE ANN. § 33.04(b) (Vernon Supp. 2000). After property owners questioned the tax assessor's authority to collect penalties and interest that have accrued since February 1, 1982, the tax assessor requested you to seek our opinion. *See* Memorandum, note 2, at 1. You do not ask about payment of the delinquent tax itself. *See id.*

Chapter 33 of the Tax Code provides a taxing unit with various means to prevent or punish delinquent taxes. *See Jones v. Williams*, 45 S.W.2d 130, 136 (Tex. 1931). A delinquent tax, for example, typically incurs a penalty of up to twelve percent of the amount of the tax. *See* TEX. TAX CODE ANN. § 33.01(a) (Vernon Supp. 2000). *But see id.* § 33.01(d) (listing circumstances in which penalty is fifty percent). A delinquent tax also "accrues interest at a rate of one percent for each month or portion of a month the tax remains unpaid" to compensate "the taxing unit for revenue lost because of the delinquency." *Id.* § 33.01(c).

---

[3]Memorandum attached to Request Letter, at 1(footnotes omitted) [hereinafter Memorandum].

Chapter 33 also provides various circumstances in which penalties and interest may be canceled or waived. Under section 33.05, delinquent taxes, penalties, and interest are presumed paid after twenty years unless litigation to collect the taxes is pending:

> (b) A tax delinquent for more than the limitation period prescribed by this section and any penalty and interest on the tax is presumed paid unless a suit to collect the tax is pending.
>
> (c) If there is no pending litigation concerning the delinquent tax at the time of the cancellation and removal, the collector for a taxing unit shall cancel and remove from the delinquent tax roll:
>
> > (1) a tax on real property that has been delinquent for more than 20 years.

*Id.* § 33.05(b), (c)(1). And, under section 33.011, a taxing unit must waive penalties and interest if the delinquent tax results from taxing-unit error and it is timely paid:

> (a) The governing body of a taxing unit:
>
> > (1) shall waive penalties and may provide for the waiver of interest on a delinquent tax if an act or omission of an officer, employee, or agent of the taxing unit or the appraisal district in which the taxing unit participates caused or resulted in the taxpayer's failure to pay the tax before delinquency and if the tax is paid within 21 days after the taxpayer knows or should know of the delinquency.

*Id.* § 33.011(a)(1).

We presume that section 33.05 of the Tax Code does not yet apply to limit collecting taxes, penalties, and interest. The taxes here have been delinquent since 1981. *See* Memorandum, *supra* note 2, at 1. The five-year notices were delivered in 2000, nineteen years later. Under section 33.05, a tax must be delinquent twenty years before it, any penalty, and interest may be presumed paid. *See* TEX. TAX CODE ANN. § 33.05(a)(2), (b) (Vernon Supp. 2000). At some point in 2001, the delinquent taxes will be canceled and penalties and interest will be presumed paid if the taxing unit does not sue to collect the tax. *See id.* § 33.05(b), (c)(1).

We further presume that the taxing unit may not waive the taxpayers' penalties and interest under section 33.011(a)(1). Because you describe the error as omitting "the then delinquent taxes from the newly created accounts," we do not believe that the error caused the delinquencies. Memorandum, *supra* note 2, at 1. Rather, the taxes were delinquent when the error was made, and the error affected only notice of the delinquency. Whether a particular property owner has failed to pay a tax before it became delinquent because of an act of an officer, employee, or agency of the

taxing unit or the appraisal district is a fact question that the opinion process cannot resolve. *See* TEX. TAX CODE ANN. § 33.011(a)(1) (Vernon Supp. 2000); *see, e.g.,* Tex. Att'y Gen. Op. Nos. JC-0020 (1999) at 2 ("[I]nvestigation and resolution of fact questions . . . cannot be done in the opinion process."); DM-98 (1992) at 3 ("[Q]uestions of fact . . . cannot be resolved in the opinion process.").

Rather than cite either section 33.011 or 33.05 of the Tax Code, you refer to section 33.04, which relates to a taxing unit's failure to notify a property owner of a delinquent tax account:

> (a) At least once each year the collector for a taxing unit shall deliver a notice of delinquency to each person whose name appears on the current delinquent tax roll. . . .

> . . . .

> (b) In addition . . . , the collector for each taxing unit in each year divisible by five shall deliver by mail a written notice of delinquency to:

> (1) each person whose name and mailing address are listed on the most recent certified appraisal roll, if the taxes on the property of that person are shown on the collector's records as having been delinquent more than one year; . . .

> . . . .

> (c) The collector shall state in the notice required by Subsection (b) the amount of the delinquent tax, penalties, and interest due, the description of the property on which the tax was imposed, and the year for which the tax is delinquent. . . .

> (d) In a suit brought against a person entitled to receive notice under Subsection (b) for the collection of penalties and interest on a tax delinquent more than five years or a multiple of five years, it is an affirmative defense available to the person that the collector did not deliver the notice required by Subsection (b).

> (e) Notwithstanding Subsection (d), interest and penalties on a tax are reinstated and shall be collected by the collector if, subsequent to the collector's failure to deliver the notice required by Subsection (b), the collector delivers the notice in any subsequent year divisible by five. The interest and penalties on the tax are reinstated prospectively and begin to accrue at the rates provided by Section

> 33.01 on the first day of the first month that begins at least 21 days after the date the collector delivers the subsequent notice.
>
> (f) A notice . . . is presumed to be delivered when it is deposited in regular first-class mail, postage prepaid, and addressed to the appropriate person under Subsection (b).

TEX. TAX CODE ANN. § 33.04 (Vernon Supp. 2000).

As we understand your question, you inquire whether the property owner must pay all or any part of the penalty and interest that accrued between the time the tax became delinquent—in this case, 1981—and the time the collector finally delivered the five-year notice—here, 2000. We assume, in answering your question, that the legislature constitutionally may waive the payment of interest that has accrued since August 26, 1991. *See infra* pp. 7-9.

The significant legal issue is the meaning of the phrase "reinstated prospectively" in subsection (e): "The interest and penalties on the tax are reinstated prospectively and begin to accrue . . . on the first day of the first month that begins at least 21 days" after delivery. *Id.* § 33.04(e). Section 33.04 does not define the phrase. We accordingly read the phrase in context and consistently with rules of grammar and common usage. *See* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1998). The term "reinstate" is commonly understood to mean "to restore to or in a proper state; to replace." XIII OXFORD ENGLISH DICTIONARY 539 (2d ed. 1989) (sense 2). The adverb "prospectively," which modifies "reinstated," means "[w]ith bearing upon or application to the future." XII OXFORD ENGLISH DICTIONARY 670 (2d ed. 1989) (sense 2). To the extent that "reinstated" refers to the past and "prospectively" refers to the future, the words contradict each other and cloud the phrase's meaning.

We resolve the confusion by construing the phrase "reinstated prospectively" to mean that penalties and interest that accrued between the time the taxes became delinquent and "the first day of the first month that begins at least 21 days after" delivery of the five-year notice are canceled. *See* TEX. TAX CODE ANN. § 33.04(e) (Vernon 2000). But if a property owner does not pay the tax by "the first day of the first month that begins at least 21 days after the date the collector delivers" the required five-year notice, penalty and interest begin to accrue on that date. The property owner must pay any penalty and interest that begin to accrue on that date.

This construction does not ignore the adverb "prospectively" and thus best effects the statutory language. We presume the legislature intended this adverb to be effective. *See* TEX. GOV'T CODE ANN. § 311.021 (Vernon 1998) (requiring construer to presume that legislature intended whole of statute to be effective); *see also In re Bay Area Citizens Against Lawsuit Abuse*, 982 S.W.2d 371, 380 (Tex. 1998) (stating that interpreter of statute should begin "with the words of the statute itself"). If the adverb were not there—if section 33.04(e) directed only that penalties and interest were to be "reinstated" if the delinquent tax was not timely paid—then we reasonably could conclude that accrued penalties and interest are not canceled but are due, in full, if the delinquent tax is not timely

paid. To give the word "prospectively" meaning, we conclude that a property owner is not liable for penalties and interest that have accrued between the time the tax became delinquent until "the first day of the first month that begins at least 21 days after the date the collector delivers" a five-year notice under section 33.04(b). *See* TEX. TAX CODE ANN. § 33.01(a), (c) (Vernon Supp. 2000).

In addition, were we to construe section 33.04 to require that accrued penalties and interest be carried forward, instead of canceled, this office would need to ascertain the period during which penalties and interest accrue so that the accrued amount may be "reinstated" if the delinquent tax is not timely paid. We may examine, to aid in statutory construction, "the consequences that would follow from alternate constructions." *See In re BACALA*, 982 S.W.2d at 380. For instance, should penalties and interest accrue until the date that the first missed five-year notice should have been delivered; until the date that the five-year notice is actually delivered; until the date that the first one-year notice is properly delivered under section 33.04(a); or until the property owner actually knows of the delinquency? Section 33.04 draws no line, and it is inappropriate for us to provide one.

Section 33.04's legislative history is not inconsistent with our conclusion. *See In re BACALA*, 982 S.W.2d at 380 ("To determine legislative intent, courts may consider . . . the nature and object to be obtained . . . ."). Prior to 1999, the statute expressly canceled penalties and interest:

> Penalties and interest on a tax delinquent more than five years
> or a multiple of five years *are cancelled* and may not be collected if
> the collector has not delivered the notice required by Subsection (b)
> of this section in each year that is divisible by five following the date
> on which the tax first became delinquent for one year.

Act of May 26, 1985, 69th Leg., R.S., ch. 761, § 1, 1985 Tex. Gen. Laws 2600, 2601 (emphasis added) (amended 1999) (current version at TEX. TAX CODE ANN. § 33.04(d) (Vernon Supp. 2000). The legislature apparently determined that an open-ended cancellation created problems. *See* HOUSE COMM. ON WAYS & MEANS, BILL ANALYSIS, Tex. C.S.H.B. 3549, 76th Leg., R.S. (1999) (articulating bill's purpose as clarifying and correcting); *Hearings on H.B. 3549 Before the House Comm. on Ways & Means*, 76th Leg., R.S. (Apr. 14, 1999) (statement of Representative Heflin, author) (tape available at House Video/Audio Services Office) ("We've worked very hard to . . . only include items that address . . . technical problems in administering the tax collection and carrying it . . . through the court system."). You suggest that the pre-1999 version of the statute allowed a taxpayer, once he or she received a five-year notice, "to delay paying the base tax without penalty." Memorandum, *supra* note 2, at 3. In this way, you continue, the pre-1999 version of the statute encouraged a property owner to delay paying the delinquent tax. *See id.* As we construe section 33.04, a taxpayer who does not timely pay the delinquent tax is penalized because penalties and interest begin to accrue if the delinquent tax is not paid within the statutory grace period. In this way, section 33.04 encourages the property owner to timely pay the delinquent tax.

The legislature has used the phrase "reinstated prospectively" in other statutes in the same or a substantially similar manner. Article 6243n-1 of the Revised Civil Statutes and article 3.50-2

of the Insurance Code use the prospective-reinstatement concept to suggest not that lost time is made up, but that the clock begins to tick. Article 6243n-1, in particular, distinguishes between the phrases "reinstated retroactively" and "reinstated prospectively." TEX. REV. CIV. STAT. ANN. art. 6243n-1, § 6.01(d)(4) (Vernon Supp. 2000). Section 6.01, article 6243n-1, permits police retirement system trustees to pay pensioners an annual cost-of-living-adjustment payment, which the statute terms an "adjustment payment." *See id.* § 6.01(c). But if the system's actuary believes it is necessary to do so, the actuary may order the trustees to stop making adjustment payments unless and until the actuary orders "either that the same adjustment payments which were discontinued . . . be *reinstated retroactively*, or that the adjustment payments (of the same amount as those which were discontinued) be *reinstated prospectively* from the date of the actuary's order to reinstate . . . ." *Id.* § 6.01(d)(4) (emphasis added). In other words, the actuary may reinstate the adjustment payments retroactively, so that the amount of adjustment pay that a retiree lost during the freeze on payment is made up, or prospectively, so that the amount lost is not made up. Article 3.50-2 of the Insurance Code similarly permits a participant in the Texas Employees Uniform Group Insurance Benefits Plan who retired between December 31, 1995 and September 1, 1997 and "who elected at the time of retirement to continue the maximum optimal term life insurance amount available to a retiree at the time," to "reinstate, prospectively, the level of optional group term life insurance in force on the participant's life immediately before the" participant retired. TEX. INS. CODE ANN. art. 3.50-2, § 11(e)(4) (Vernon Supp. 2000), *as enacted by* Act of May 28, 1997, 75th Leg., R.S., ch. 1048, § 49, 1997 Tex. Gen. Laws 3986, 3999. Thus, a retiree may raise the amount of optional group term life insurance in force to an amount equal to that in force just before retirement, effective September 1, 1997, but the increase is not effective to cover the time between retirement and the effective date. *See id.*

Moreover, article 6243n-1 of the Revised Civil Statutes and article 3.50-2 of the Insurance Code, when authorizing "retroactive reinstatement," provide a specific point in time at which certain benefits stop, to be reinstated at a later point in time. Under article 6243n-1, reinstatement relates back to the date that the actuary ordered that the adjustment payments be discontinued. *See* TEX. REV. CIV. STAT. ANN. art. 6243n-1, § 6.01(d)(4) (Vernon Supp. 2000). Under article 3.50-2, reinstatement relates back to the time "immediately before the" participant retired. *See* TEX. INS. CODE ANN. art. 3.50-2, § 11(e)(4) (Vernon Supp. 2000), *as enacted by* Act of May 28, 1997, 75th Leg., R.S., ch. 1048, § 49, 1997 Tex. Gen. Laws 3986, 3999. Section 33.04 of the Tax Code does not, by stark contrast, provide a specific point in time to which the reinstatement of penalties and interest relates back.

Our construction also comports with judicial decisions construing the phrase. For example, in *Harris v. Railroad Retirement Board* the federal Court of Appeals for the Fifth Circuit concluded that the widow's annuity payments that Harris received under the Railroad Retirement Act until she remarried should be "reinstated . . . prospectively" from the date the second marriage was annulled. *Harris v. R.R. Ret. Bd.*, 3 F.3d 131, 135 (5th Cir. 1993). The Railroad Retirement Board was not required to make up the amount of the annuity payments from the date of the second marriage until the annulment. *See id.*; *see also Haskew v. Bradford*, 370 So. 2d 259, 260-61 (Alaska 1979) (concerning prospective reinstatement of court order).

We finally assume that, to the extent section 33.04 of the Tax Code purports to cancel interest, it does not violate article III, section 55 of the Texas Constitution. Article III, section 55 withholds from the legislature "power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part," any corporate or individual "indebtedness, liability or obligation . . . to this State or to any county or defined subdivision thereof, or other municipal corporation therein," except taxes that are at least ten years overdue. TEX. CONST. art. III, § 55. If the interest on delinquent taxes is "indebtedness, liability or obligation" for the purposes of article III, section 55, then the legislature constitutionally may not release or extinguish those that are not at least ten years overdue. *See id.* In a 1931 case, *Jones v. Williams*, the Texas Supreme Court decided that interest on delinquent taxes was not "interest eo nomine," or true interest that the state imposes and demands as compensation for not timely having the money. *See Jones v. Williams*, 45 S.W.2d 130, 133 (Tex. 1931). Rather, according to the court, it is in reality a penalty that the state imposes to discourage property owners from not timely paying ad valorem taxes. *See id.* Article III, section 55 authorizes the legislature to release or extinguish penalties and interest that serve to prevent delinquency or to punish the property owner unless the penalties or interest have been reduced to a judgment, but the legislature may not release or extinguish interest eo nomine. *See* TEX. CONST. art. III, § 55; *Jones*, 45 S.W.2d at 137-39. After examining the state's tax statutes' history, the *Jones* court concluded that impositions made for "failure to pay taxes, whether . . . denominated 'penalties,' 'interest,' [or] 'forfeitures,'" are really "penalties imposed for delinquency or failure of duty." *Jones*, 45 S.W.2d at 133. They are not "charges made by the state for the use or detention of its money." *Id.* In other words, the interest on delinquent ad valorem taxes under the *Jones* decision is a penalty, not interest eo nomine; it is "not a part of the tax" proper, and the legislature constitutionally may release it. *Id.* at 138.

Whether *Jones* remains good law is unclear to us. Since *Jones* was decided, the legislature in 1991 amended section 33.01 of the Tax Code explicitly to state that interest on delinquent taxes compensates a taxing unit "for revenue lost because of" a delinquency. *See* TEX. TAX CODE ANN. § 33.01(c) (Vernon Supp. 2000); Act of May 27, 1991, 72d Leg., R.S., ch. 836, § 5.3, 1991 Tex. Gen. Laws 2890, 2893. Two federal courts have determined that the 1991 amendment undermines *Jones'* classification of interest as a penalty that the legislature constitutionally may release or extinguish. *See Irving Indep. Sch. Dist. v. Packard Props.*, 970 F.2d 58, 65 (5th Cir. 1992); *Galveston Indep. Sch. Dist. v. Heartland Fed. Sav. & Loan Ass'n*, 159 B.R. 198, 204-05 (S.D. Tex. 1993). As the Fifth Circuit Court of Appeals stated in *Irving Independent School District*, the amendment, "effective on August 26, 1991, . . . shows the Texas legislature's desire to reverse *Jones* as it might affect section 33.01(c) [of the Tax Code] and to treat interest imposed under that subsection as interest and not as a penalty." *Irving Indep. Sch. Dist.*, 970 F.2d at 65. Thus, the court concluded, the amendment substantively changed Texas tax law "by redesignating what was once a penalty as interest and, therefore, partially overruling *Jones*." *Id.*; *accord Galveston Indep. Sch. Dist.*, 159 B.R. at 205 ("This amendment overruled *Jones*."). But a more recent decision of a state court of appeals confirms *Jones'* continued validity: "The [Texas] Supreme Court has held that Section 55 of article III does not apply to interest and penalties on delinquent taxes, [and] . . . . we are not at liberty to overrule long-standing precedent of our high court." *Jefferson County v. Clark*

*Ref. & Mktg., Inc.*, 7 S.W.3d 324, 328 (Tex. App.–Beaumont 1999, no pet.) (citing *Jones*). While the *Jefferson County* court recognized that "[u]nder current law, interest compensates the taxing unit for revenue lost because of the delinquency," *id.* at 328 n.3, the decision does not address whether the amendment redesignating interest as interest eo nomine affects the court's conclusion in *Jones* that interest serves as a penalty. *See id.* at 328.

Given the uncertain status of the law, we assume that, to the extent section 33.04(e) of the Tax Code, or any of the other sections we have cited, *e.g.*, sections 33.011 and 33.05, releases a property owner of the obligation to pay interest that has accrued since August 26, 1991—the date that the amendment to section 33.01(c) became effective—it does so consistently with article III, section 55 of the Texas Constitution. *See* TEX. TAX CODE ANN. §§ 33.01(c), .011(a)(1), .05(b), (c) (Vernon Supp. 2000); Act of May 27, 1991, 72d Leg., R.S., ch. 836, § 5.6, 1991 Tex. Gen. Laws 2890, 2894. Our conclusion with respect to the release of penalties is not premised on any similar assumption, however.

Thus, assuming that the legislature constitutionally may waive the collection of interest that has accrued since August 26, 1991, a property owner who owes delinquent property tax to whom a required five-year notice was not delivered, in accordance with section 33.04 of the Tax Code, is not responsible to pay any penalty and interest that accrued between the time the taxes became delinquent and the first day of the first month that begins at least twenty-one days after the five-year notice is finally delivered. On the first day of the first month that begins at least twenty-one days after the notice is delivered, penalty and interest begin to accrue unless the delinquent tax has been paid. Of course, if the tax has been delinquent twenty years, and there is no litigation pending to collect the tax, the taxing unit must, under section 33.05, cancel and remove the tax from the delinquent tax roll and presume the penalty and interest paid (again assuming that the legislature constitutionally may release interest that has accrued since August 26, 1991). *See* TEX. TAX CODE ANN. § 33.05(b), (c)(1) (Vernon Supp. 2000).

## S U M M A R Y

A taxpayer who owes property tax that is delinquent more than five years but who has not received proper notice under section 33.04(b) of the Tax Code is not responsible to pay any penalty and interest until "the first day of the first month that begins at least 21 days after the" tax collector delivers proper notice. *See* TEX. TAX CODE ANN. § 33.04(b), (e) (Vernon Supp. 2000); *see also id.* § 33.04(f) (defining delivery). Any penalty and interest that has accrued between the time the tax became delinquent and the first day of the first month that begins at least twenty-one days after the delivery of proper notice is canceled. This conclusion assumes that the legislature may, without violating article III, section 55 of the Texas Constitution, release and extinguish a property owner's obligation to pay interest that has accrued since August 26, 1991. *See* Act of May 27, 1991, 72d Leg., R.S., ch. 836, §§ 5.3, 5.6, 1991 Tex. Gen. Laws 2890, 2893, 2894.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General - Opinion Committee